## COMMONWEALTH *vs.* LUIS A. RIVERA.

Middlesex. April 9, 1997. - July 29, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Search and Seizure,* Affidavit. *Constitutional Law,* Search and seizure, Self-incrimination. *Evidence,* Impeachment of credibility, Prior inconsistent statement, Expert opinion, Credibility of witness, Prior conviction, Cross-examination. *Practice, Criminal,* Instructions to jury, Argument by prosecutor. *Witness,* Credibility. *Controlled Substances.*

At a criminal trial, where the defendant filed a pretrial affidavit pursuant to Mass. R. Crim. P. 13 (a) (2), in support of his motion to suppress evidence and where his testimony at trial differed significantly from his affidavit, the prior inconsistent statements in the affidavit were correctly admitted in evidence for impeachment purposes; there was no substantial risk of a miscarriage of justice in the judge's allowing the Commonwealth to use the affidavit. [637-638]

At the trial of a criminal case, the prosecutor's cross-examination of the defendant with respect to inconsistencies and omissions in a pretrial affidavit the defendant filed in support of his motion to suppress evidence did not encroach on the defendant's right to remain silent, nor did it violate G. L. c. 278, § 23, which prohibits a prosecutor from commenting on a defendant's failure to present evidence or testify at a pretrial hearing, and no substantial risk of a miscarriage of justice was created by the prosecutor's questioning. [638-640]

This court stated that, in the future, on the defendant's request, the judge at a criminal trial should conduct a voir dire on the question of impeaching a defendant with a pretrial affidavit and, if the evidence is admitted, the judge should instruct the jury to consider the omission of any facts from the affidavit only if they find that the defendant naturally should have spoken up in the circumstances. [640-641]

In a criminal case in which the prosecutor used the defendant's pretrial affidavit to impeach the defendant on cross-examination, references in the affidavit to the defendant's right to remain silent should not have been before the jury; however, in the circumstances, the admission of the affidavit did not create a substantial risk of a miscarriage of justice, where the jury's attention was not in any way focussed on those references, where the judge gave appropriate limiting instructions on the jury's use of the affidavit, and where the particular references did not imply that the defendant was hiding something or that he was guilty. [641-643]

At the trial of complaints for possession of a class B substance with intent to distribute and within 1,000 feet of a school zone, the judge properly admitted expert opinion testimony of a police officer without having qualified

the witness as an expert before the jury, and no substantial risk of a miscarriage of justice was created by the absence of an instruction to the jury regarding their evaluation of expert testimony. [643-645]

At the trial of complaints for unlawful possession of a class B substance, improper opinion testimony that the defendant was involved in a drug sale was not prejudicial and did not require reversal of the defendant's conviction, where that testimony was not the only evidence presented regarding the sale, where the defendant did not contest whether a sale had occurred, and where the defendant's own testimony supported the inference that drug sales were occurring at the address in question. [645-646]

At the trial of complaints, statements of the prosecutor in closing argument regarding the limited purpose for which the jury could consider evidence of the defendant's prior convictions did not constitute an impermissible direction to the jury to consider the defendant's prior convictions as evidence of his bad character; moreover, the prosecutor was responding to defense counsel's improper suggestions regarding the use of prior convictions. [646-647]

At the trial of a complaint for possession of a class B substance with intent to distribute, the evidence was sufficient to warrant the denial of the defendant's motions for required findings of not guilty. [647-649]

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on January 3, 1995.

A pretrial motion to suppress evidence was heard by *William E. Melahn*, J., and the case was tried before *Neil J. Walker*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert C. Sacco* for the defendant.

*Carlene A. Pennell*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A criminal complaint was issued in the Lowell Division of the District Court Department against the defendant charging him with possession of a class B substance with intent to distribute in violation of G. L. c. 94C, § 32A (*a*), and with possession of a class B substance with intent to distribute within 1,000 feet of a school zone in violation of G. L. c. 94C, § 32J. The defendant's pretrial motion to suppress was accompanied by a sworn affidavit. After a three-day trial, the defendant was convicted of both charges by a jury of six. The defendant appealed from his convictions. We transferred the case here on our own motion.

On appeal, the defendant contends that (1) he was improperly impeached with an affidavit that he filed with his motion to suppress; (2) a police officer was allowed to give opinion testimony;

(3) the prosecutor's closing argument improperly directed the jury to consider his prior convictions for improper character purposes; and (4) the judge improperly denied his motions for required findings of not guilty. We affirm.

*Facts.* The jury could have found the following facts. On December 31, 1994, Inspectors Philip J. Conroy and John Boutselis of the Lowell police department responded to a complaint about automobiles blocking a roadway. After speaking with several people in the vicinity, the officers set up surveillance of 125-127 Salem Street, positioning themselves so as to observe the rear entry of an apartment on the third floor, left hand side of the building. During the course of their surveillance, the officers twice witnessed individuals climb the rear entry staircase to this apartment, engage in a short conversation with a man inside, make a hand-to-hand exchange with that man at the apartment's threshold and then leave. Each conversation and exchange lasted approximately three to five minutes. The officers could not hear the conversations and could not see what was exchanged; nor could they see the facial characteristics of the man inside the apartment. The officers were, however, able to observe that the man inside the apartment was of medium height and was wearing a black jacket and a black baseball cap.

After twice observing this activity the officers repositioned themselves closer to the apartment. Two more men, one Caucasian and one Hispanic, then approached the apartment. Inspector Conroy, who was thirty feet away and aided by a light illuminating the apartment threshold, later identified the man inside the apartment as the defendant. The officers witnessed another conversation and exchange; Conroy then proceeded up the staircase "at a fast pace," and, using his radio, told Inspector Boutselis to watch the front door of the apartment building and stop anyone leaving the building. Conroy then apprehended the Caucasian man whom he had seen engaging in the exchange with the defendant.

Boutselis testified that the defendant, still wearing a black jacket and baseball hat, left the apartment building through the front door. On seeing Boutselis, the defendant dropped two clear plastic "baggies" to the ground, which laboratory testing revealed contained cocaine. Boutselis arrested the defendant and escorted him back to the apartment.

A protective sweep of the apartment, which was sparsely furnished, disclosed a machete near the door where the officers

had observed the defendant engage in conversations and exchanges with various individuals. A search of the defendant revealed a knife, a pager, twenty dollars, and a key which fit the lock on the apartment door. Conroy knocked on the only other door on the third floor of the apartment building and spoke to one of the occupants, Yolanda Ortiz, who stated that the defendant had not been in her apartment at any time that evening.

1. *The affidavit.* The defendant's trial testimony differed significantly from his affidavit filed in support of his motion to suppress. The defendant now argues that the Commonwealth's use of the affidavit to impeach him was error because (1) the affidavit was an involuntary statement by the defendant and was thus inadmissible; (2) the prosecutor's cross-examination based on the affidavit violated G. L. c. 278, § 23, and encroached on the defendant's right to remain silent; and (3) it violated his right not to have evidence of the assertion of his right to remain silent used against him.

Defense counsel's only objection at trial to the use of the affidavit was that it offended the best evidence rule.[1, 2] Thus, we reject the defendant's contentions that he properly preserved his objections to the admission and use of the affidavit and fairly alerted the trial judge to potential errors now claimed on appeal. See *Commonwealth* v. *Barnoski*, 418 Mass. 523, 534 (1994); *Commonwealth* v. *Sherick*, 401 Mass. 302, 303 (1987). See also *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982) ("[a]n issue not fairly raised before the trial judge will not be considered for the first time on appeal"). Indeed, while defense counsel objected to several questions regarding the affidavit, it is clear that he did not object to the majority of questions. Moreover, the objections raised by defense counsel are not those the defendant now presses on appeal. Thus while the defendant properly points out that Mass. R. Crim. P. 22, 378 Mass. 892 (1979), does not require a party to state the grounds for an objection, a defendant "is not permitted to raise an issue

---

[1]The defendant does not now press that argument on appeal.

[2]We note that there was a sidebar conference that was "largely inaudible" where, after the affidavit was admitted in evidence, there is some reference to having a sentence redacted from the affidavit. The defendant, however, makes no argument that at sidebar he sought to have reference to the defendant's right to remain silent redacted from the affidavit; rather, the defendant concedes that the issues regarding the defendant's right to remain silent were not expressly raised by trial counsel.

before the trial court on a specific ground, and then to present that issue to this court on a different ground." *Commonwealth* v. *Tyree*, 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983), quoting *Commonwealth* v. *Flynn*, 362 Mass. 455, 472 (1972).[3] We review the defendant's claims, therefore, only to determine whether a substantial risk of a miscarriage of justice resulted from the use of the affidavit. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

a. Under Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979), a party filing a pretrial motion must file "an affidavit detailing all facts relied upon in support of the motion." The defendant claims, therefore, that, because he was required to file an affidavit in support of his motion, the affidavit is an involuntary statement that is not admissible for any purpose. We disagree.

It has been well established that a defendant's testimony in support of a motion to suppress evidence pursuant to the Fourth Amendment to the United States Constitution may not be admitted against him at trial on the issue of guilt. See *Simmons* v. *United States*, 390 U.S. 377, 394 (1968).

This rule, however, has not been applied to exclude the use of prior inconsistent statements for impeachment purposes. See *United States* v. *Quesada-Rosadal*, 685 F.2d 1281, 1283 (11th Cir. 1982) ("the use of prior inconsistent statements given at a suppression hearing can be used to impeach a defendant's trial testimony, whether given during direct or cross examination"). See also *United States* v. *Smith*, 940 F.2d 710, 713 (1st Cir. 1991) (suggesting that testimony from preliminary hearing might be used for purposes of impeachment at trial); *United States* v. *Charles*, 738 F.2d 686, 698 (5th Cir. 1984) (noting that suppression hearing testimony might be used for purposes of impeachment at trial). Cf. *Commonwealth* v. *Judge*, 420 Mass. 433, 446 & n.9 (1995) (where defendant takes stand at pretrial hearing on motion to suppress confession, fact that testimony

---

[3]The defendant also points out that, at a sidebar conference, he sought to call attorneys as expert witnesses in order to explain the purpose of an affidavit. Assuming this is true the judge nevertheless was not properly put on notice of the arguments the defendant now makes on appeal. It may well be that expert testimony may have assisted the jury in determining, as they were instructed, whether the defendant's prior statements were inconsistent with his trial testimony given the limited purpose of the affidavit. The defendant, however, does not argue on appeal that the judge erred in refusing to admit such expert testimony. As such, the argument is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

may later be used at trial does not mean cross-examination of defendant at pretrial hearing should be limited).[4] In declining to extend the protection of *Simmons, supra,* to prohibit the use of prior inconsistent statements, courts have emphasized the need to protect the integrity of the judicial process. See *United States* v. *Beltran-Gutierrez,* 19 F.3d 1287, 1291 (9th Cir. 1994). See also *United States* v. *Kahan,* 415 U.S. 239, 243 (1974) (recognizing that Court had not decided whether testimony given at suppression hearing may be used for impeachment purposes but suggesting that protection of *Simmons, supra,* is not to be converted into license for false testimony). Indeed, because a defendant has no right to commit perjury, he or she cannot expect to give trial testimony markedly different from pretrial testimony with impunity. See *Commonwealth* v. *Judge, supra* at 446. Cf. *Jones* v. *Commonwealth,* 327 Mass. 491, 493 (1951).

By so concluding, we emphasize that, if a defendant chooses to file a pretrial motion accompanied by a supporting affidavit signed by the defendant, the only burden placed on the defendant is a permissible one — that he or she tell the truth. *Commonwealth* v. *Judge, supra.* See *Harris* v. *New York,* 401 U.S. 222, 225 (1971). Thus, where there is no error, there cannot be a substantial risk of a miscarriage of justice.[5]

b. The defendant next contends that the prosecutor's cross-examination based on the affidavit encroached on the defendant's

---

[4]The Supreme Court has recognized that *Simmons* v. *United States,* 390 U.S. 377 (1968), left open the issue of the proper use of the defendant's pretrial testimony for impeachment purposes. *United States* v. *Salvucci,* 448 U.S. 83, 93-94 (1980). In recognizing the issue, however, the Court commented that "[a] number of courts considering the question have held that such testimony is admissible as evidence of impeachment." *Id.* at 93 n.8. Moreover, the Court has suggested that the protection of *Simmons* is not to be converted into a license for false representations. *United States* v. *Kahan,* 415 U.S. 239, 243 (1974).

[5]We also note that the defendant's argument that he is placed in a "Catch-22" situation where, no matter what his choice is, potentially incriminating evidence may be obtained against him, also fails given our conclusion that an affidavit is a voluntary statement that can be used for limited purposes. The defendant's argument relies heavily on *Opinion of the Justices,* 412 Mass. 1201 (1992), where we opined that admission of a refusal to take a breathalyzer test would be a violation of art. 12 of the Massachusetts Declaration of Rights. Our opinion relied on the fact that, where the two choices — taking a breathalyzer test or having the refusal to take the test admitted — were both "capable of producing evidence" against a defendant, an individual would be placed in a "Catch-22" situation, for no matter what the choice, potentially

right to remain silent and violated G. L. c. 278, § 23.[6] We disagree.

It is fundamental that evidence of a defendant's postarrest, post-Miranda silence cannot be used for any purpose. See *Commonwealth* v. *Teixera*, 396 Mass. 746, 752 (1986). Similarly, "comments on postarrest statements indicating a defendant's intention to exercise his or her right to remain silent are equally unacceptable." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694-695 (1983), citing *Commonwealth* v. *Cobb*, 374 Mass. 514, 518 (1978).

Merely by taking the witness stand in his own defense, a defendant does not waive his right to be free of any adverse inferences being drawn from his previous assertion of his right to remain silent. *Commonwealth* v. *Mahdi, supra* at 694. See *United States* v. *Hale*, 422 U.S. 171, 175, 181 (1975). A defendant who takes the witness stand, however, is subject to the ordinary rigors of proper cross-examination, including questioning about prior inconsistent statements voluntarily made. See *Commonwealth* v. *Judge, supra* at 444-445; *Commonwealth* v. *Martino*, 412 Mass. 267, 283 (1992) ("[t]he prosecutor was entitled to comment on the difference between the defendant's pretrial statements and his trial testimony"); *Commonwealth* v. *Sherick*, 401 Mass. 302, 305 (1987) (where defendant's pretrial statements contrasted with his trial testimony, prosecutor properly pointed out to jury inconsistencies in defendant's story). Such inconsistencies include the omission from a pretrial statement where it would have been natural to include the omitted fact. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 648-650 (1991) (failure of defendant to tell police in his post-Miranda statement that victim had made

incriminating evidence might be obtained against the defendant. *Id.* at 1211. Here, however, the defendant can either pursue a pretrial motion or not. Unlike the situation with the breathalyzer test, if he chooses not to pursue a pretrial motion, that fact will not be used against him as the refusal to take a breathalyzer test would have been under the proposed statute we considered in our opinion. Moreover, if he chooses to pursue a pretrial motion, his statements cannot be used as substantive evidence of guilt.

[6]General Laws c. 278, § 23, provides: "At the trial of a criminal case in the superior court, upon indictment, or in a district court, the fact that the defendant did not testify at any preliminary hearing in the first court, or that at such hearing he waived examination or did not offer any evidence in his own defense, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer."

sexual advances, which defendant testified to at trial, could be considered evidence of consciousness of guilt); *Commonwealth v. Teixera, supra* ("[c]omment on a defendant's silence or failure to deny accusations against him under circumstances where the defendant might be expected to speak is permissible . . . and does not interfere with the defendant's exercise of his right to remain silent"); *Commonwealth v. McClary*, 33 Mass. App. Ct. 678, 685 (1992), cert. denied, 510 U.S. 975 (1993) ("the prosecutor may ask the defendant about any *omission* from his post-Miranda statement which is at variance with his trial testimony" [emphasis in original]). See also *Commonwealth v. Simmonds*, 386 Mass. 234, 242 (1982), quoting *Commonwealth v. West*, 312 Mass. 438, 440 (1942) (prior statement need not "contradict in plain terms the testimony of the witness. 'It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict' "). Where a prosecutor comments on such omissions, the prosecutor is not trampling on a defendant's right to remain silent. *Commonwealth v. Sherick, supra*. Rather the prosecutor is alerting the jury to possible flaws in the defendant's testimony. *Id.*

Similarly, by pointing out such inconsistencies, the prosecutor does not violate G. L. c. 278, § 23, which prohibits a prosecutor from commenting on a defendant's failure to present evidence or testify at a pretrial hearing. See *Commonwealth v. Sherick*, 23 Mass. App. Ct. 338, 342-343 n.5, *S.C.*, 401 Mass. 302 (1987) ("G. L. c. 278, § 23, has in effect been largely if not altogether overtaken by [constitutional] guarantees").

In the instant case, therefore, it was proper for the prosecutor to question the defendant regarding inconsistencies between his pretrial affidavit and his trial testimony, and thus no substantial risk of a miscarriage of justice was created by the prosecutor's questioning. While the defendant argues that the judge should have conducted a voir dire on the question of impeachment and that the jury should have been instructed that the omission of certain facts from the affidavit might be considered for impeachment purposes only if the jury found that the defendant would naturally have included such facts in the affidavit, the defendant did not request a voir dire or any such instruction. Moreover, the judge gave the substance of the request in his instruction on

the use of prior inconsistent statements.[7] We note, however, that in the future, on request, a trial judge should conduct a voir dire on the question of impeaching a defendant with a pretrial affidavit and, if the evidence is admitted, on request the judge should instruct the jury to consider the omission of any facts from the affidavit only if they find that the witness naturally should have spoken up in the circumstances. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 62 (1982) (suggesting similar guidelines where prosecutor seeks to use defendant's prearrest silence to impeach defendant's trial testimony).

c. Finally, we consider the defendant's argument that the admission of the affidavit was error because of the references in the affidavit to the defendant's right to remain silent.[8]

A prosecutor is prohibited from mentioning a defendant's choice to remain silent because silence in the wake of these warnings "may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every postarrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Commonwealth* v. *Cobb*, *supra* at 520-521, quoting *Doyle* v. *Ohio*, 426 U.S. 610, 617-618 (1976). See *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694 (1983); *Commonwealth* v. *King*, 34 Mass. App. Ct. 466, 469 (1993). In

---

[7]The judge instructed the jury: "In evaluating how reliable a witness's testimony is, you may also take into account whether or not that witness made an earlier statement that differs in any significant way from his present testimony at trial. It's for you to say how significant any difference is. The earlier statement is not itself positive evidence of any fact that's mentioned in it. To repeat, if a witness's earlier statement is not consistent with his present testimony, you may take into account when you determine how much belief to give that witness's present testimony from the witness stand. The prior statement is relevant only as to the witness's credibility, and you may not take it as proof of any fact that might be contained in it."

[8]The first paragraph of the affidavit provided: "I, Luis Rivera, am the Defendant in the above-entitled criminal matter and make this Affidavit in support of the Defendant's Motion to Suppress Evidence and Statements. I do not waive any rights I may have against self-incrimination."

The eleventh paragraph of the affidavit provided: "During the time that I was held and restrained in the custody of the Lowell Police officers I may have made statements to the Lowell Police officers. Prior to making any statements, I was not informed of any rights that I may have had and I did not voluntarily and knowingly waive any rights that I may have had."

short, fundamental unfairness results from the use of evidence of such silence or any comments by a defendant regarding the exercise of his right to remain silent. *Commonwealth* v. *Mahdi*, *supra* at 695.

The references in the affidavit to the defendant's right to remain silent, therefore, should not have been before the jury. We conclude, however, that the admission of the affidavit in this case did not create a substantial risk of a miscarriage of justice.

We attach great weight to the fact that the jury's attention was not in any way focused on these statements in the affidavit. Indeed, while credibility was a critical issue in the case, the prosecutor never sought to use the defendant's silence against him during his cross-examination or in his closing argument. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 892 (1980) (where prosecutor's remarks were merely susceptible of being interpreted as comment on defendant's failure to take stand, no reversible error where implication was not even particularly clear); *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 344 (1987) ("question is whether the jury's attention is being directed to the defendant's silence or failure to produce evidence as the basis for the prohibited inference, or is rather directed to a different matter, with the silence, in the rather unlikely event it draws any attention, being sensed as collateral or incidental"). See also *United States* v. *Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), cert. denied, 430 U.S. 917 (1977) ("unless a prosecutor's comments are of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify, they are not prejudicially unfair"). Contrast *Commonwealth* v. *Mahdi, supra* at 696-698 (factors in concluding prosecutor's reference to defendant's exercise of his Miranda rights was harmful was that prosecutor's multiple references to defendant's exercise struck at "jugular" of defense).

We note also that the judge twice instructed the jury, once shortly after the affidavit was admitted in evidence, without objection, that the affidavit was to be used only insofar as it was evidence of prior inconsistent statements and told the jurors that they were not to speculate about the outcome of any pretrial proceedings. Such an instruction, we believe, was appropriate in these circumstances. Indeed, the instruction did not, as the defendant argues, instruct the jury to use evidence of the defendant's silence against him. Rather, the instruction limited

the use of the contents of the affidavit by instructing the jury that only if they found statements in the affidavit to be inconsistent with his trial testimony could the affidavit be used in assessing the defendant's credibility. In these circumstances, where the jury's attention was not directed to the defendant's right to remain silent and was properly focused on the use of the affidavit as evidence of statements made by the defendant that differed from his trial testimony, any specific mention of the right may have called undue attention to the issue in the minds of the jurors. See *Commonwealth* v. *Manago,* 26 Mass. App. Ct. 262, 267 n.10 (1988). Cf. *Commonwealth* v. *Mahdi, supra* at 698 (one factor in concluding that prosecutor's reference to defendant's exercise of his Miranda rights was harmful error was failure of judge to give curative instructions).

Finally, we note that the statements themselves and the peculiar context in which they arise do not present the dangers that ordinarily result from a reference to the defendant's right to remain silent. See *Commonwealth* v. *Martino,* 412 Mass. 267, 283 (1992); *Commonwealth* v. *Hartman,* 404 Mass. 306, 317-318 (1989). Indeed, the first statement now objected to by the defendant states that he is not waiving any rights by filing the affidavit in the first place; the defendant, however, goes on to make a statement by filing the affidavit. The second statement now objected to by the defendant suggests that he did, in fact, make a statement to the police despite his right to remain silent. Thus, contrary to the defendant's argument, it is unlikely the jury perceived either reference to the defendant's right to remain silent as indicative of the fact that he was hiding something or as substantive evidence of his guilt. We conclude, therefore, that the admission in evidence of the unredacted affidavit was not prejudicial such that the use of the affidavit created a substantial risk of a miscarriage of justice.

2. *The expert testimony.* Inspector Conroy testified over objection that, based on his training and experience, he would characterize the activity he observed on the third floor of 125-127 Salem Street as drug transactions.[9] On redirect examination, he testified, again over objection, that the person inside the

[9]THE PROSECUTOR: "Based on your training and experience, Officer, and the information that you had obtained that night, did you form an opinion of whether, about the character of the activity that was occurring on the third floor?"

THE WITNESS: "Yes."

apartment, whom he identified as the defendant, was the seller and that the persons coming up the stairs to the apartment were buyers.[10]

It is true, as the defendant argues, that Conroy was never specifically qualified by the judge as an expert despite the fact that the officer was questioned as to his qualifications in the field of narcotics.[11] In some instances, it can be implied that a witness is testifying as an expert. *Leibovich* v. *Antonellis*, 410 Mass. 568, 572 (1991). Accord *Commonwealth* v. *Cantres*, 405 Mass. 238, 246 (1989); *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 682 (1985); *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975).[12] Moreover, "the judge need not qualify a witness as an expert before the jury." *Commonwealth* v. *Richardson*, 423 Mass. 180, 184 (1996). Thus, we

---

THE PROSECUTOR: "What was going on?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled."

THE WITNESS: "I believe drug activity or drug transactions."

[10]THE PROSECUTOR: "Okay, now some mysterious questions were asked about what caught your attention during this and the number of people involved. Was your attention on who you thought the buyers were primarily, or who you thought the seller was?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "He can answer it."

THE WITNESS: "Both. On the transaction that was occurring in front of me. Both the buyer and the seller."

THE PROSECUTOR: "With respect to the person who came up that back stairs, did you understand that they were buyers or sellers?"

THE WITNESS: "I believed them to be buyers, the seller to be at the third [floor] door."

[11]Inspector Conroy testified that he had worked for the Lowell police department for seven years. He had a bachelor's degree in criminal justice, a master's degree, and had attended a sixteen-week program at the Northeast Regional Police Institute, a State police academy, as well as several seminars involving drug investigations and gang activity. While Conroy was currently assigned to the gang unit, he had previously worked "street patrol" and in the course of his career had made over 800 to 900 narcotics arrests and had been involved in approximately 1,500 narcotics investigations. The defendant does not make any argument that Conroy's experience was insufficient to qualify him as an expert.

[12]The defendant makes no argument that the judge improperly charged the jury that it was their function to determine whether the officer was qualified to render an opinion.

agree with the Commonwealth that Conroy may have properly given expert testimony.

The defendant also argues that we must consider Conroy's testimony as improper lay opinion because there was no instruction to the jury regarding how to evaluate expert testimony. The defendant did not request such an instruction, however, and we conclude that the absence of such an instruction did not create a substantial risk of a miscarriage of justice. See *id.* Indeed, Conroy "did not belong to one of those professions easily identified by jurors as those from whom expert opinions are typically drawn. For those reasons, there was little danger that the jury would ascribe additional significance to [his] testimony in the absence of an official designation by the judge as an 'expert witness.' " *Id.* at 185. In addition, the judge adequately instructed the jury on their role as judges of the credibility of all witnesses. *Id.* We conclude, therefore, that a failure to give a particularized instruction did not create a substantial risk of a miscarriage of justice.

Finally, the defendant argues that, even if Conroy was properly qualified as an expert witness, he impermissibly offered an opinion as to the defendant's guilt or innocence. We agree that the testimony objected to here is very similar to the testimony that we held improper in *Commonwealth* v. *Woods*, 419 Mass. 366, 375 n.13 (1995); that the testimony here exceeded the bounds of admissible expert testimony; and that it was error to allow it. That error, however, was not prejudicial. *Id.* at 375. The Commonwealth presented the firsthand accounts of Inspectors Conroy and Boutselis; Boutselis testified that he observed brief conversations that were followed by hand-to-hand exchanges in an area he spent a "lot of time in" while fulfilling his duties investigating street-level drug dealing, and that, after viewing these transactions, he and his partner decided to separate and to intercept anyone approaching the third floor of 125-127 Salem Street. The defendant characterized the neighborhood as a "drug neighborhood." But see note 16, *infra*. Thus, even without the improper opinion, the evidence created a strong inference regarding the nature of the transactions, and contrary to the defendant's argument, the improper testimony was not the only evidence presented regarding distribution. See *Woods*, *supra* at 375-376 (where evidence gave rise to strong inference of drug transaction, improper expert opinion that defendant was involved in drug sale was harmless). Moreover, we also note

that the defendant argued not that drug transactions had not occurred but that the defendant had been misidentified. Indeed, the defendant himself testified to facts that would support the inference that drug transactions were occurring at 125-127 Salem Street. Thus, the improper testimony of Conroy does not require reversal.[18]

3. *The closing argument.* During his closing argument, the prosecutor stated:  ·

> "I want you to look at these certified copies of convictions, not as [defense counsel] would have you believe, because I want you to see he's a bad guy and deserves to be convicted. I want you to look at this so that you can consider, look at what he's done — he's a bad guy, he isn't worth believing. That's what I want you to think about. And he's not worth believing on several points, including the point of his address, and that is inconsistent."

At this point, defense counsel objected. After the judge overruled the objection, the prosecutor stated: "And that is the sole purpose, the sole limited purpose, but it's an important purpose. Because it has to do with the credibility of the person who took the stand and swore to you that what he was saying was true." The defendant now argues that the prosecutor's closing arguments impermissibly directed the jury to consider the defendant's prior convictions as evidence of his bad character. We disagree.

Evidence of a defendant's prior convictions is not admissible for the purpose of arguing to the jury that a defendant has a criminal propensity or is of general bad character. See *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991); *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986); *Commonwealth* v. *Brown*, 389 Mass. 382, 384 (1983). Such evidence is, however, admissible for the limited purpose of impeaching a defendant's credibility. See *Commonwealth* v. *Riccard*, 410 Mass. 718, 724 (1991); *Commonwealth* v. *Gallagher*, 408 Mass. 510, 516 (1990); *Commonwealth* v. *Fano*, 400 Mass. 296, 302-

---

[18]Unfortunately drug sales are so common in present society that almost any witness could draw the inference that drug sales were occurring when observing the activities described by Inspector Conroy. *Commonwealth* v. *Woods*, 419 Mass. 366, 375-376 (1995).

303 (1987) ("a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath"). See also G. L. c. 233, § 21. See generally P.J. Liacos, Massachusetts Evidence § 6.9.2, at 304-305 (6th ed. 1994 & Supp. 1995).

In the instant case, the prosecutor's closing argument properly reminded the jury that he was asking them to convict the defendant not because he was a "bad guy" who had committed other crimes but because the defendant's version of events was not credible. While the defendant suggests that the prosecutor was only pretending "to admonish the jury not to use the five convictions for improper purposes" while doing just the opposite, we do not believe the prosecutor's argument can be so characterized particularly where, as here, "[d]efense counsel clearly invited the prosecutor's comments with remarks in his own closing argument." *Commonwealth* v. *Amirault*, 404 Mass. 221, 236 (1989). Indeed, it was the defense counsel, who, in his closing arguments, coined the phrase "bad guy" and argued that "the Commonwealth wants you to believe [the defendant is] a bad guy so he must have done this," and "they want you to believe that because he did those things . . . he must have done this." The prosecutor was entitled to respond to defense counsel's improper suggestions regarding the use of prior convictions, and his reminder to the jury of the limited use of the defendant's prior convictions, although not artful, is not a ground for reversal.[14]

4. *The motions for required findings of not guilty.* At the close of the Commonwealth's case and again at the end of all evidence, the defendant moved for required findings of not guilty on both counts. The motions were denied. The defendant argues that the evidence was insufficient to sustain a conviction for possession with intent to distribute in large part because the

---

[14]We note that the judge also instructed the jury on the proper use of prior convictions. He stated: "You have heard evidence that [the defendant] was previously convicted of a crime. You may consider that information only for the purpose of helping you decide whether or not to believe his testimony and how much weight, if any, to give it. You may not draw any inference of guilt against [the defendant] because of his prior convictions. The fact that he was once found guilty of another crime does not mean that he is guilty of this charge. And you must not consider that prior conviction to be any indication of his guilt. You may consider his prior convictions solely to help you in deciding and determining whether or not he is a truthful witness."

quantity of drugs and cash seized was too minimal to suggest distribution.[15, 16]

In considering whether a denial of a motion for a required finding of not guilty is proper, we must consider whether, viewing the evidence in the light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, *Commonwealth* v. *Azar,* 32 Mass. App. Ct. 290, 304 (1992), any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Commonwealth* v. *Cordle,* 412 Mass. 172, 175 (1992); *Commonwealth* v. *Salemme,* 395 Mass. 594, 595 (1985). In this case, the defendant's intent to distribute a controlled substance "is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had . . . by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970), quoting *Commonwealth* v. *Holiday,* 349 Mass. 126, 128 (1965).

Concededly, factors often considered as permitting an inference of intent to distribute drugs are not present in this case. Cf. *Commonwealth* v. *Clermy,* 421 Mass. 325, 331 (1995) (packaging of drugs in many small packets indicative of drugs prepared for distribution); *Commonwealth* v. *Roman,* 414 Mass. 642, 645 (1993) (possession of large amount of illegal drugs raises inference of intent to distribute); *Commonwealth* v. *Ellis, supra* at 578 (presence of processing equipment and empty bags supported inference defendant engaged in distribution). The evidence does tend to show, however, that the defendant had engaged in the hand-to-hand exchanges and the jury could have properly inferred that these were drug transactions. See *Commonwealth* v. *Monterosso,* 33 Mass. App. Ct. 765, 770-771 (1992) (several persons making short visits to defendant's apart-

---

[15]The two baggies contained .18 and .23 grams of cocaine, respectively, and only twenty dollars were found on the defendant.

[16]In addition, the defendant argues that no tools associated with drug distribution were found; there was no expert testimony that the packaging of the cocaine was consistent with that designed for sale; the amount or denomination of the money found on the defendant was not consistent with a sale; and the quality of the narcotics was not consistent with distribution. Although the defendant testified that the area is a "drug neighborhood," he further claims that there was no evidence to suggest that the arrest took place in an area known for high levels of drug activity and points out that he never attempted to flee and has continuously denied involvement in narcotics distribution.

ment shortly before the search supported inference of drug distribution as opposed to possession for personal use). There was evidence that the incidents occurred in an area known for drug dealing. *Commonwealth* v. *Pena*, 40 Mass. App. Ct. 905 (1996) (fact that defendant was arrested in area with high incidence of drug dealing supported his conviction for possession with intent to distribute). A key to the empty apartment where the police officers had observed these exchanges was found on the defendant. See *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 259-260 (1994) ("sparse furnishings of the apartment indicated that it was a stash house, used solely for storing and selling drugs"). In addition, a pager was found on the defendant, and Conroy testified that pagers are commonly used by those engaged in the drug trade to "communicate and transport and notify each other for drug activity."[17] See *Commonwealth* v. *Clermy*, *supra* (possession of telephone pager, traditional accouterment of illegal drug trade, one factor supporting intent to distribute conviction); *Commonwealth* v. *Pena*, *supra* at 906 (same). In light of this evidence, we conclude that the evidence was sufficient such that the defendant's motions for required findings of not guilty were properly denied.[18]

*Judgments affirmed.*

---

[17]Defense counsel elicited this testimony regarding pagers from Inspector Conroy on cross-examination and the defendant makes no argument that the testimony constituted improper expert opinion.

[18]The defendant does not challenge the Commonwealth's evidence that the incident occurred within 1,000 feet of a school zone.