## Commonwealth *vs.* Alisha A., a juvenile.

No. 00-P-1814.

Plymouth. March 15, 2002. - October 28, 2002.

Present: Jacobs, Cypher, & Kantrowitz, JJ.

*Practice, Criminal,* Juvenile delinquency proceeding, Required finding, Argument by prosecutor. *Evidence,* Credibility of witness. *Controlled Substances.*

The evidence at a criminal trial was sufficient for the jury reasonably to infer that the juvenile distributed a Class C controlled substance, Klonopin, in violation of G. L. c. 94C, § 32B, and did so within 1,000 feet of a school, in violation of G. L. c. 94C, § 32J, where the juvenile told a fellow student that she would be bringing Klonopin pills into school the next day and distributing them to others; where the juvenile displayed pills and a prescription bottle the next day; where the student to whom the juvenile distributed the pills described their color in a manner that was generally consistent with the juvenile's mother's description of the color of her Klonopin pills; and where the pills that the juvenile distributed had markings similar to those on Klonopin pills. [313-315]

The prosecutor at a criminal trial did not improperly vouch for the credibility of witnesses by using rhetorical terms, such as "I suggest" or "I would suggest," when urging the jury to evaluate the demeanor and the testimony of the witnesses in determining their credibility, where the prosecutor made no statement of personal belief; moreover, even if some of the questions that the prosecutor asked the jurors to address, or her concluding statement that a "fair and just verdict is a verdict of guilty," might be construed as being improper, there was no substantial risk of a miscarriage of justice. [315-316]

COMPLAINTS received and sworn to in the Plymouth County Division of the Juvenile Court Department on April 11, 2000.

The cases were tried before *Robert F. Murray,* J.

*John T. Ouderkirk, Jr.,* for the juvenile.

*Christina L. Crowley,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. A Juvenile Court jury returned verdicts of

delinquency on charges that the juvenile distributed a Class C controlled substance, G. L. c. 94C, § 32B, and did so within 1,000 feet of a school, G. L. c. 94C, § 32J. In this appeal, the juvenile claims that the evidence was insufficient to show a controlled substance was involved and that the prosecutor's closing argument was improper.

The evidence at trial, viewed in accordance with *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), is as follows. In the evening of March 8, 2000, the juvenile, a student at a private alternative school in East Bridgewater, telephoned Susan,[1] another student. The juvenile told Susan that she was going to bring Klonopin[2] pills into school and distribute them.

On the following day, the juvenile's mother, who had a prescription for "[p]ink" Klonopin pills, noticed that seventeen pills were missing. At school that same day, the juvenile showed Susan a pill bottle. Susan saw pills inside but could not describe them further. Later that day, the juvenile gave Michael, another student, some pills from a bottle. He described them as round, "pinkish orange," with the letter "K" "punched out." Michael put about fifteen of them in his pocket and consumed a "couple" of them around lunchtime. Michael also told Susan that he received pills from the juvenile. The juvenile showed John, another student, a "regular prescription bottle" in class, and pointed to Michael as one who had received the pills. She told Mark, another student, that she and Michael were going to get in trouble ("bopped"); she showed Mark a prescription bottle with no label, saying she had "[a lot of] pills," and put it back in her pocket.

The assistant program director of the school was called to Michael's classroom early that afternoon and observed that Michael appeared to be "under the influence." After confronting Michael about his behavior, the assistant director called local paramedics, having decided that Michael should be sent to a hospital in Brockton for screening. Before the paramedics arrived, the assistant director talked to Michael about his condi-

---

[1]We use pseudonyms for all of the juveniles.

[2]A physician testified that Klonopin is a trade name for the drug Clonazepam. General Laws c. 94C, § 31, lists Clonazepam as a Class C(*a*)(3) controlled substance.

tion and also talked to four other students, one of whom gave him an unmarked prescription container. This student sat directly to the juvenile's right in the classroom. The assistant director described the contents of the container as "pinkish brownish pills with a hollowed out 'K' in the middle." The assistant director sent the container and the pills with the paramedics to be delivered to hospital personnel. A physician testified that he was familiar with the drug Klonopin and that Klonopin pills are "usually identifie[d]" by a "K" marked on them.

*Sufficiency of the proof of a controlled substance.* The juvenile understandably does not argue that there was insufficient evidence of distribution. She claims only that there was insufficient proof that Klonopin was distributed and that her motion for a required finding of not guilty should have been allowed. No certificate of analysis was introduced pursuant to G. L. c. 111, § 13. A police officer, in the course of his investigation, sought the pills which had been sent to the Brockton hospital with Michael, and determined that the container and the pills were destroyed at the hospital and never tested.

A certificate of analysis is not a prerequisite to proving that the pills are a controlled substance. See *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987) ("Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence"). To determine whether a rational trier of fact could have found the essential elements of the crime of distribution beyond a reasonable doubt, "the [juvenile's] intent to distribute a controlled substance 'is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had . . . by inference from all the facts and circumstances developed at the trial.' *Commonwealth* v. *Ellis*, 356 Mass. 574, 578-579 (1970), quoting *Commonwealth* v. *Holiday*, 349 Mass. 126, 128 (1965)." *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997).

The jury reasonably could have inferred that the distributed substance was Klonopin from the juvenile's statements to Susan the evening before the incident that she would be bringing

Klonopin pills into school and distributing them to others,[3] and that they were in her home by prescription, a fact confirmed by the juvenile's mother, who testified that she had discovered seventeen pills missing that day. The juvenile's display of pills and a prescription bottle to Susan and other students the next day also supports the conclusion that the juvenile carried out her stated intention. Moreover, the color of the pills Michael received from the juvenile was generally consistent with the pink color described by her mother. The appearance of the letter "K" on those pills, viewed in the light of the physician's testimony that Klonopin pills usually are identified by that letter, further supports the conclusion that the juvenile distributed Klonopin.[4] Viewed cumulatively, this evidence provides an ample evidentiary basis from which a rational jury could find the essential elements of the charged crime beyond a reasonable

---

[3]We need not address the juvenile's argument, raised for the first time in her reply brief, that these statements should not have been admitted for their probative effect because they did not constitute an admission of guilt. In any event, this argument is without merit. "Any extrajudicial statement by a party may be admitted in evidence against that party by an opponent, and will not be excluded on the ground that it constitutes hearsay." Liacos, Brodin & Avery, Massachusetts Evidence § 8.8.1, at 496 (7th ed. 1999).

We also do not consider any issue of the voluntariness of these statements. The issue was not raised below nor argued to us. Contrast *Commonwealth* v. *Smith*, 426 Mass. 76, 82-83 (1997).

[4]To the extent that there were any differences in testimony regarding the color or marking of Klonopin pills, those differences would only affect the weight of the evidence and constituted an issue to be resolved by the jury.

In concluding the evidence was sufficient to show the juvenile distributed Klonopin,. we do not rely on lay testimony such as that permitted by *Commonwealth* v. *Dawson*, 399 Mass. at 467 ("The great weight of authority in this country permits, for example, an experienced user of a controlled substance to testify that a substance that he saw and used was a particular drug"). In *Commonwealth* v. *Cantres*, 405 Mass. 238, 246-247 (1989), the Supreme Judicial Court stated that "[i]t is enough that the witness have familiarity based on prior use or sale" and that " '[i]dentification based on past use coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance.' " *Ibid.*, quoting from *United States* v. *Harrell*, 737 F.2d 971, 978-979 (11th Cir. 1984), cert. denied, 469 U.S. 1164 (1985), and 470 U.S. 1027 (1985). While there was testimony in this case tending to show some knowledge of the use of Klonopin, as when Michael described feeling "high," or acknowledged that he had "overdosed" on the pills; or when Susan stated that she "knew how people act when they take Klonopin when it's not theirs"; or when the assistant director described Michael as seeming to be "under the influence," these unspecific and conclu-

doubt. See *Commonwealth* v. *Rivera*, 425 Mass. at 648. The juvenile's motion for a required finding of not guilty properly was denied.

*Alleged prosecutorial error.*[5] The juvenile's assertion that the prosecutor vouched for the credibility of witnesses is without merit. In her closing argument the prosecutor used rhetorical terms such as "I suggest" or "I would suggest" when urging the jury to evaluate the demeanor and the testimony of the witnesses in determining their credibility. See *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987). There was no statement of personal belief by the prosecutor. The prosecutor properly could respond to defense counsel's argument suggesting the jury could infer that Michael sought the help of his friends to "point the finger" at the juvenile, knowing that he was "in trouble" for ingesting the pills, and had to "come up with some story as to how he got those pills." In responding, the prosecutor asked the jury to consider whether the answers of each student "seemed frank" and "forthcoming" and whether "they were trying to hide anything," in evaluating their credibility and motive to testify. She argued that the jury should consider that Michael appeared to want drugs, and she asked the jury to consider the testimony that the students had been friendly with the juvenile. She suggested that their demeanor and testimony would indicate they had not conspired with Michael in making up a "story" to blame the juvenile. These responses were proper. Compare *Commonwealth* v. *Chavis*, 415 Mass. 703, 712-714 (1993). The argument was factually based and properly suggested that the jury consider the demeanor of witnesses in assessing their testimony. No improper rhetorical questions were posed. Compare *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250 (1988). We discern no support for the juvenile's claims that

sory remarks do not demonstrate such familiarity or experience as alone would sufficiently identify Klonopin to support a conviction.

[5]As a separate issue, the juvenile first complains that the prosecutor improperly elicited testimony from Michael that he was aware that he could be charged for taking the pills, and then asked him, "[Y]et, you showed up to testify today?" This question, not objected to, occurred on redirect examination, following questions raised in cross-examination as to whether Michael was testifying pursuant to any promises made by the prosecution and whether he understood that he could be charged with possession. There was no error. Compare *Commonwealth* v. *Rivera*, 430 Mass. 91, 96 (1999).

the prosecutor referred to facts not in evidence or significantly misstated the physician's testimony or improperly characterized the students' testimony. Because there also was no request for a curative instruction, we conclude the judge was not required to go beyond the instructions he gave concerning comments of counsel.

Even if some of the questions that the prosecutor asked the jurors to address, or her concluding statement that a "fair and just verdict is a verdict of guilty," might be construed as being improper, compare *Commonwealth* v. *Springer*, 49 Mass. App. Ct. 469, 475 (2000), we conclude, in the absence of an identifiable objection,[6] that there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

---

[6]At a bench conference following the conclusion of the prosecutor's closing, defense counsel made a statement marked "inaudible" in the transcript. The judge responded: "I don't think anything remotely touching prosecutorial misconduct was made during the course of the argument in this case." Another "inaudible" statement of counsel followed, and the bench discussion turned to several requested instructions, none of which touched upon the prosecutor's argument. The juvenile has not identified anything material to her appeal in the inaudible portions, nor has she taken any steps under the applicable sections of Mass.R.A.P. 8(b)(3), as amended, 388 Mass. 1106 (1983), "to ensure that the record is adequate for appellate review." *Commonwealth* v. *Woody*, 429 Mass. 95, 99 (1999). Accordingly, we review the claims of error under the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 & n.8 (1987).