NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-392

COMMONWEALTH

vs.

MELISSA MARTIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of operating a motor vehicle while under the influence of drugs (OUI-drugs).[1] On appeal the defendant argues that the evidence was insufficient to support her conviction and that the trial judge abused his discretion when he allowed a State police trooper to give an opinion about the defendant's sobriety.  We affirm.

Background.  We summarize the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  On October 22, 2020, Jonathan

_____

[1] The defendant pleaded guilty to the subsequent (fourth) offense portion of the charge.

Magazzu, a MAPFRE operator,[2] was working a 3 P.M. to 7 P.M. shift on Route 495 when he saw a car stopped at the bottom of the exit ramp leading to Route 114 toward North Andover. Part of the car "was on the actual street," and part was on the "grass and on the actual shoulder."

Magazzu approached and saw that "the passenger side door was wide open" and an "unresponsive female," later identified as the defendant, was in the driver's seat. Magazzu knocked on the door and called out, "are you okay?" to try to wake the defendant without startling her. When he received no response, Magazzu "reached in and grabbed [the defendant] by the arm" and "shook" her while asking if she was awake. The defendant's body then "arched up," and her "head [went] back," in what Magazzu said was not a "relaxed sleeping type of position." Magazzu called for medical assistance.

Trooper Alexander Vath was the first to respond to the call, just after 6 P.M. When he arrived, the defendant was still seated in the car, which Trooper Vath described as "parked in the middle of an exit ramp." The defendant was awake but "appeared fatigued, sleepy, and generally confused." Concerned

_____

[2] Magazzu testified that MAPFRE operators drive help vans "up and down the highway" doing "basically the same thing that AAA would do," including "helping with out of gas, tire changes, [and] simple tasks with stranded motorists." Operators "are trained with CPR" and "work side by side with [S]tate police."

2

for her wellbeing, Trooper Vath ordered the defendant to get out of the car and noticed that she "struggl[ed]" while trying to do so.

Troopers Samantha Cila and Ryan Durkin arrived on scene after the defendant had exited the car. Trooper Cila described the defendant to be "kind of out of it by the way she was speaking" and "in and out of . . . a gaze," as though she was "not super sure of where she was." Similarly, Trooper Durkin described the defendant as "slow, kind of lethargic, [and] . . . kind [of] out of it." Trooper Durkin saw that the keys were in the ignition, but the engine was not running and the lights were not on. He also saw an ignition interlock device affixed to the steering wheel.

Inside the car the troopers found a "needle cap" in the cup holder and four hypodermic needles inside a purse that was in the rear passenger compartment. Two of the needles contained a "red liquid substance" and were "in a loaded position," while the other two were "unused." At Trooper Vath's request, the defendant rolled up her sleeves, revealing several track marks. Trooper Durkin noticed that one of the track marks had dried blood around it, which he testified was consistent with "a fresh track mark." When asked if "there was anything illegal in the car," the defendant removed a "baggie" containing a "tan powder

3

substance" from her left pants pocket, stating that it was a "bag of dope."

The defendant was transported by ambulance to the hospital. There, after being advised of her Miranda rights, the defendant told Trooper Durkin that she "had shot up between the hours of 11:00 and 12:00" earlier that day. The defendant's medical records also contain several notations that she admitted to using "heroin" earlier that day. The defendant claimed to Trooper Durkin that she had been on her way to Chelmsford when her "vehicle started to die" and "she rolled off to the bottom of the ramp as far as the car would go." She then "essentially . . . fell asleep."

Discussion. 1. Sufficiency of the evidence. In assessing sufficiency, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Latimore, 378 Mass. at 677. To sustain a conviction of OUI-drugs, the Commonwealth must prove that the defendant "(1) physically operated a [motor] vehicle; (2) on a public way; (3) while under the influence of a narcotic drug." Commonwealth v. Bouley, 93 Mass. App. Ct. 709, 712 (2018). Here, the defendant argues that the Commonwealth failed to meet its burden for two reasons: it offered no

4

evidence that the defendant was impaired by a narcotic drug as defined in G. L. c. 94C, § 1; and, even assuming impairment, the evidence was insufficient to show that the defendant was impaired while operating the vehicle. Neither argument persuades us.

Prior to trial and on the Commonwealth's motion, the judge took judicial notice that heroin is a scheduled drug under G. L. c. 94C, § 1. The defendant did not object, and the judge later instructed the jury "as a matter of law that heroin is a narcotic drug." On appeal the defendant does not challenge the judge's ruling or the instruction but contends that the Commonwealth offered no proof that the particular drug involved was heroin. In so arguing, however, the defendant does not address the notations in the medical records -- which were admitted as a joint exhibit with agreed-on redactions -- that she specifically admitted to using heroin that day. There was circumstantial evidence corroborating this admission, including the "fresh track mark" on the defendant's arm, the needles found in her car, her description of the bag of tan powder in her pocket as a "bag of dope," and her admission to Trooper Durkin that she had "shot up" that morning. Viewing this evidence in the light most favorable to the Commonwealth, it was sufficient to show that the drug at issue was heroin. See Bouley, 93 Mass.

5

App. Ct. at 713; Commonwealth v. Alisha A., 56 Mass. App. Ct. 311, 313-315 (2002).

Contrary to the defendant's claim, the Commonwealth was not required to establish the precise quantity or concentration of the drugs that she used in order to prove impairment. Rather, the Commonwealth's burden was to show "that the use of a narcotic drug resulted in the 'impairment, to any degree, of an individual's ability to safely perform the activity in question.'" Bouley, 93 Mass. App. Ct. at 712, quoting Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016). The Commonwealth presented ample evidence to meet this burden. Magazzu found the defendant unresponsive in her car, which was parked in the middle of an exit ramp with the passenger-side door wide open. When Magazzu shook the defendant, her body arched back in an unnatural manner that was not consistent with someone who had been sleeping. Later, she struggled to get out of the car and appeared to the troopers to be confused, "out of it," and unsure where she was. The jury could have found from this evidence that the defendant was impaired. See Bouley, supra at 712-713 ("Considering that the defendant was unconscious and barely breathing at the scene of the accident, the jury could reasonably infer that whatever amount of fentanyl he took was sufficient to impair his capacity to operate the car

safely").  The defendant's arguments to the contrary ask us to view the evidence in the light least favorable to the Commonwealth, which we may not do.  See Latimore, 378 Mass. at 677.

A reasonable juror could also have found that the defendant was impaired while operating a motor vehicle.  The evidence was plainly sufficient to show operation, given that the defendant was the only person in the car and that she admitted to Trooper Durkin that she drove it to its resting spot.  See Commonwealth v. Lagotic, 102 Mass. App. Ct. 405, 408-409 (2023).  The defendant does not appear to contest this point but argues that there was no evidence that she was impaired "at the time of the last possible operation," about an hour before the troopers arrived on scene.[3]  We take the defendant to be suggesting that she could have been sober while driving and that she consumed the heroin only after she parked.  But putting aside that the defendant did not develop any such theory at trial, the Commonwealth "need not 'exclude every reasonable hypothesis of innocence' to prove its case, if the record viewed in its entirety supports 'a conclusion of guilt beyond a reasonable

_____

[3] An employee from an ignition interlock provider company testified that the defendant's car was shut off at 5:09 P.M. and not restarted until the next day.  There is no evidence as to the precise time that Magazzu came upon the defendant, but it was before Trooper Vath's arrival around 6 P.M.

7

doubt.'"  Commonwealth v. Platt, 440 Mass. 396, 401 (2003), quoting Commonwealth v. Merola, 405 Mass. 529, 533-534 (1989). The evidence here -- in particular, the defendant's admission to using heroin earlier and the state in which the car was found, parked in the middle of an exit ramp -- was sufficient for the jury to find that the defendant was under the influence of heroin when she drove the car there.  See Bouley, 93 Mass. App. Ct. at 711-712 ("The inferences that support a conviction need only be reasonable and possible; [they] need not be necessary or inescapable" [citation omitted]).

2.  Opinion testimony.  Prior to trial the Commonwealth moved to elicit opinion testimony from Trooper Vath that the defendant "appeared impaired by an opiate," stating that the opinion was based on Trooper Vath's observations of the defendant and his past experience as an emergency medical technician (EMT).  The defendant objected on the grounds that she did not receive timely notice and that Trooper Vath was not qualified to give expert testimony.  After expressing doubt that Trooper Vath was "being offered as an expert," the judge ruled that he would only be "permitted to testify that the [d]efendant appeared to be impaired."  The Commonwealth then proceeded to elicit testimony from Trooper Vath that he worked for many years as an "EMT basic" and later as an "EMT paramedic" and that

8

during that time he interacted with people suspected of drug use on an almost daily basis.  When the Commonwealth then asked whether he "ha[d] an opinion as to [the defendant's] sobriety" based on his observations that evening, Trooper Vath replied, "A lack thereof, Counselor."  The judge overruled the defendant's objection.

On appeal the defendant argues that the judge's rulings ran afoul of Commonwealth v. Gerhardt, 477 Mass. 775, 785 (2017), in which the court held that a police officer may not, "without being qualified as an expert, . . . offer an opinion that a defendant was intoxicated by marijuana."  The defendant further argues that the judge should have excluded the testimony on the ground of late disclosure.  Because these issues were preserved, "we must determine whether the admission in evidence . . . constituted prejudicial error."  Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 389 (2017).  "An error is not prejudicial if it did not influence the jury, or had but very slight effect" (citation omitted).  Id.

We need not resolve whether the judge properly admitted Trooper Vath's testimony because, even assuming error, it was not prejudicial.  As described above, the evidence of the defendant's impairment was substantial.  In addition, the judge instructed the jury that they were the sole arbiters of the

9

facts and the credibility of the witnesses, that they could accept or reject any portion of a witness's testimony, and that one of the factual questions they had to decide was whether the defendant was under the influence of a narcotic drug on the evening in question.  Given these instructions and the strong evidence of impairment, we are fairly assured that Trooper Vath's brief testimony about the defendant's sobriety did not influence the jury's verdict or had only a very slight effect.  See Gallagher, 91 Mass. App. Ct. at 389-391.  The defendant has also failed to articulate what prejudice she suffered from the late disclosure of the testimony.  See Commonwealth v. Hamilton, 426 Mass. 67, 70 (1997) ("When the ground for . . . exclusion of evidence involves late disclosure by the prosecution, without any showing of bad faith on its part . . ., a defendant is required to show material prejudice from the disclosure before a new trial can be considered").

Judgment affirmed.

By the Court (Blake, C.J., Shin & Hand, JJ.[4]),

Clerk

Entered:  March 3, 2025.

---

[4] The panelists are listed in order of seniority.