COMMONWEALTH *vs.* BERNADA SOTO.

No. 97-P-0287.

Suffolk. March 18, 1998. - June 19, 1998.

Present: FLANNERY, GILLERMAN, & DREBEN, JJ.

*Practice, Criminal,* Required finding. *Controlled Substances. Evidence,* Hearsay, Opinion. *Witness,* Expert.

At the trial of a complaint for distribution of cocaine, G. L. c. 94C, § 34A(*a*), the evidence, including the reasonable inferences to be drawn therefrom, was sufficient to warrant a finding that the defendant was guilty beyond a reasonable doubt. [111-112]

At the trial of a complaint for distribution of cocaine, testimony detailing the police interrogation of the person to whom the defendant allegedly sold cocaine that was highly prejudicial and of marginal relevance was improperly admitted and, where the Commonwealth's case was not overwhelming, the defendant was entitled to a new trial. [113-114]

At the retrial of a criminal case, the judge should limit certain testimony, if offered, that expresses the witness's opinion of the defendant's guilt. [114-115]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on May 2, 1995.

The case was tried before *Paul K. Leary,* J.

*Estera Halpern* for the defendant.

*Karen A. Rooney,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. In an area of the Roxbury section of Boston being investigated for drugs, the defendant was observed engaging in what police considered a drug transaction.[1] She was charged and convicted of distribution of a class B controlled substance. G. L. c. 94C, § 32A(*a*). On appeal, she claims that the judge erred (1) in denying her motion for a required finding of not guilty; (2) in admitting hearsay and opinion evidence; and (3) in

---

[1]See part 3, *infra.*

basing the defendant's sentence on improper considerations.[2]
While we reject the defendant's claim that she was entitled to a
required finding of not guilty, we conclude that the introduction
over objection of hearsay questions which indicated the
defendant was the seller of the drugs requires a new trial.

Officer William Duggan of the Boston police department was
the sole witness at trial. Based on his testimony, the jury were
warranted in finding the following facts. On May 1, 1995, Dug-
gan and Sergeant Aldrich, in an unmarked police car and dressed
in plain clothes, set up an observation post to watch a "heroin
house" on Norfolk Avenue in Roxbury. Duggan had previously
made undercover drug purchases at the house. In the early
afternoon of May 1, 1995, the officers saw, with the aid of
binoculars, a woman in a tan Ford automobile park on Norfolk
Avenue approximately 100 yards from their post. Some fifteen
minutes later, a Chevrolet Camaro driven by the defendant
parked behind the Ford. The defendant was known to Duggan.
Seconds after the Camaro appeared, the woman in the Ford
signalled with her tail lights and then drove toward Marshfield
Street. The defendant followed in the Camaro as did the officers
in their car. The Ford and the Camaro stopped approximately
one block from the location where the automobiles had
originally met on Norfolk Avenue. The defendant left the Ca-
maro and approached the driver's side of the Ford. Although
Duggan did not see anything in the defendant's hands, he saw
her reach inside the driver's window of the Ford, remove her
hand, and proceed back to the Camaro. She was at the driver's
door of the Ford for no more than fifteen seconds. Thereafter
both cars drove away.

The officers followed and stopped the Ford. Duggan ap-
proached the driver, one April Miller, informed her of her rights,
described what he had just observed, and asked her whether she
was willing to cooperate.[3] Thereupon, Miller reached into her
bra and removed a plastic bag containing a white powder

[2]The defendant was sentenced to two years in the Suffolk County house of
correction, one year to be served, the balance suspended for two years until
September 23, 1998.

[3]After Duggan testified that he asked if she was willing to cooperate, he
added, "At that point, she . . . ." The defendant objected and her objection
was sustained. The next question to the officer was: "After you asked her if
she was willing to cooperate with you, what happened?" The answer to this
second question was: "She reached into her bra, and handed me one plastic

substance which was later determined to be cocaine. After additional questioning of Miller — she did not refuse to answer any questions — Duggan informed her that he would charge her with possession of a class B controlled substance.

The next day a complaint was lodged against the defendant charging her with distribution of a class B controlled substance.[4]

1. *Sufficiency of the evidence.* "In considering whether a denial of a motion for a required finding of not guilty is proper, we must consider whether, viewing the evidence in the light most favorable to the Commonwealth, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997). In some instances, the facts are not susceptible of proof by direct evidence and resort must be had by inference from all the facts and circumstances at trial. *Ibid.*

Contrary to the defendant's contention, this is not a case like *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 306 (1975), where the evidence was "inconclusive both as to the passage of [the] drug and as to the direction of any such passage." The following findings and inferences were warranted. The defendant had a planned rendezvous with the driver of the Ford, the location was a street containing a "heroin house" where Duggan had previously purchased drugs. After the driver of the Ford signalled, the two cars did not remain at the location but drove one block away from Norfolk Avenue to reduce the chances of detection. The defendant approached the Ford, reached into it with her arm and left within fifteen seconds. Both cars attempted to leave. When the driver of the Ford was stopped and informed of the police observations, she answered all questions and produced from her bra a plastic bag containing cocaine. Although the officer did not see an exchange or what was transferred, the reaching into the Ford by the defendant in the circumstances of the purposeful meeting, the drive to another location, and the exceedingly brief interval of the encounter, coupled with the production of the packet of cocaine from Miller's bra, tended to show that there was at least a transfer, if

bag, containing what I believed to be cocaine."

As there was no objection to the second question, it would appear that the objection was directed to the characterization of Ms. Miller's response and not to the fact that the officer asked Ms. Miller whether she would cooperate.

[4]The defendant was also charged with conspiracy to violate the controlled substance law, but this charge was dismissed at the request of the Commonwealth with the consent of the defendant.

not a hand-to-hand exchange. On these facts, the jury could properly infer that this was a drug transaction. See *Commonwealth* v. *Rivera*, 425 Mass. at 648.

Small quantities of drugs are easily concealed, see *Commonwealth* v. *Kennedy*, 426 Mass. 703, 710 (1998), and in certain situations, an illegal drug transaction may be inferred from other circumstances even if what is transferred is not actually seen. *Ibid.* See *Commonwealth* v. *Savageau*, 42 Mass. App. Ct. 518, 519 (1997). Although the *Kennedy* case involved probable cause to arrest, and not, as here, a conviction, we consider the reasonable inferences from the evidence in this case sufficiently strong so as not to require the officer to have seen the actual transfer of the drug.

We reject the defendant's contention that even if there were sufficient evidence to indicate that a drug transaction had taken place, the evidence was such that it was equally likely that the defendant was the purchaser as that she was the seller. Here, unlike the cases of *Commonwealth* v. *Senati*, 3 Mass. App. Ct. at 306; *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 998 (1982); and *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 539 (1990), where it could not reasonably be determined who was the buyer or who was the seller, the jury were warranted in finding that the packet of cocaine produced from Miller's bra almost immediately after her encounter with the defendant, and as a consequence of her discussion with Duggan, came from the defendant, and that Miller had been the buyer. Cf. *Commonwealth* v. *Woods*, 419 Mass. 366, 376 (1995).

Although it is conceivable that Miller was the seller and remained with a single additional packet of cocaine in her bra after a sale to the defendant, the finder of fact in the circumstances could reasonably conclude that that scenario was less likely and that it was more probable that the single packet in her bra was obtained by her as buyer. The Commonwealth in proving its case need not exclude every hypothesis. The inference that the defendant sold the drugs "need not be necessary or inescapable so long as it is reasonable and possible." *Commonwealth* v. *Cohen*, 412 Mass. 375, 380 (1992). The Commonwealth must "present evidence from which a finder may [without speculation] infer the essential facts." *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 262 (1997). It has met that burden here. The record supports a finding by the jury of guilt beyond a reasonable doubt.

2. *Hearsay testimony of Officer Duggan.* Over the defendant's objection, Duggan was permitted to testify that in questioning Miller, he had asked her how she had communicated with the defendant, the phone number she had called, who had answered the phone, whether there had been a beeper, why she had met the defendant on Norfolk Avenue, and what she had paid for the drugs.[5]

The defendant argues that this testimony was inadmissible hearsay and was prejudicial because it indicated to the jury that a drug transaction had just taken place and that the defendant was the seller.

Duggan's series of extrajudicial statements or questions to Miller were hearsay and subject to exclusion, unless offered and admitted for purposes other than their truth. See *Commonwealth v. Perez,* 27 Mass. App. Ct. 550, 555 n.2 (1989).

The Commonwealth seeks to justify the admission of these questions as being offered not for their truth but to establish the state of Duggan's knowledge which led him to the defendant. It is true that policemen or other investigators may explain what they did in consequence of conversations with others. *Commonwealth v. Cordle,* 404 Mass. 733, 743-744 (1989). *Commonwealth v. Perez,* 27 Mass. App. Ct. at 554, and cases cited. *Commonwealth v. Smith,* 33 Mass. App. Ct. 947, 948 (1992). See *Commonwealth v. Miller,* 361 Mass. 644, 659 (1972). "The reason for this rule, which is one of long standing, is that such testimony makes the discovery of the actual evidence of identity seem more natural and less mysterious." *Commonwealth v. Perez, supra* at 554 (internal citations omitted). As pointed out in that case, *supra* at 555, and by the commentators, the specific details are seldom needed and present the likelihood of serious prejudice. See McCormick, Evidence § 249, at 104 (4th ed. 1992); Mueller & Kirkpatrick, Modern Evidence § 8.18, at 1101-1102 (1995). "For this reason a statement that an officer acted 'upon information received,' or 'as a consequence of a conversation,' or words to that effect — without further detail

---

[5]Duggan also testified that he had asked Miller how many times she had bought drugs from the defendant prior to the May 1, 1995, occasion. The judge sustained the defendant's objection to this question, ordered that it be struck from the record, and told the jury to "totally disregard" the testimony and draw no inference that "there was any prior activity whatsoever between the parties."

— satisfy the purpose of explaining police conduct." *Perez,* 27 Mass. App. Ct. at 555 (citations omitted). See *Cordle,* 404 Mass. at 743. While in some instances the admission of the statements themselves has not been found to be error, in those cases the statements were either of greater materiality, see *Commonwealth v. LaVelle,* 414 Mass. 146, 156-157 (1993),[6] or were of little prejudice. See *Commonwealth* v. *Cohen,* 412 Mass. at 393.

Here, the statements were not only highly damaging, they were unneeded — there was no mystery as to the defendant's identity; she was known to the police. Moreover, there was no testimony to connect the questions with the subsequent charging of the defendant. Duggan testified that when he finished getting the information from Miller, "she was allowed to leave at that point. Sergeant Aldrich and I returned to the station to fill out the reports and log in the bag of cocaine." In these circumstances, where the evidence was highly prejudicial and only of marginal relevance to Duggan's actions, we conclude there was an "active danger that a jury could misuse the evidence." *Commonwealth* v. *Harris,* 409 Mass. 461, 469 (1991). "[I]ts prejudicial impact far outweigh[ed] its relevance." *Commonwealth* v. *Demars,* 38 Mass. App. Ct. 596, 598 (1995). See *Commonwealth* v. *Urena,* 42 Mass. App. Ct. 20, 22 (1997).

3. *Duggan's opinion testimony.* At trial, when asked why he stopped Miller, Duggan testified that he stopped her "in the belief that she had just purchased cocaine." There was no objection to this testimony. The Commonwealth properly concedes that the testimony was improper. "An expert may not . . . offer an opinion as to the defendant's innocence or guilt." *Commonwealth* v. *Woods,* 419 Mass. 366, 375 (1995). *Commonwealth* v. *Barbosa,* 421 Mass. 547, 555 (1995). While it is unlikely that this evidence alone created a substantial risk of a miscarriage of justice, see *Woods,* supra at 376 (improper testimony only slightly beyond the opinion evidence which would have been admissible, namely that the activities were consistent with drug dealing), we need not reach the issue in view of our conclusion in part 2, *supra,* of this opinion. In any

[6]See also *Commonwealth* v. *Miller,* 361 Mass. at 658-659. In that case a witness was permitted to testify that a number of drug users and pushers had mentioned the defendant's name. It was held that the testimony was material and admissible for the limited purpose of showing, as against a defense of entrapment, that the inducement by the police of the defendant was not shocking and offensive.

event, if there is a retrial, the officer's opinion should be limited as required.

The remaining issues raised by the defendant are unlikely to arise on retrial, and are, in any event, without merit.[7]

Since the evidence in this case that the defendant was the seller was not overwhelming, and since we are persuaded that the error described in part 2, *supra*, was sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error, see *Commonwealth* v. *Demars*, 38 Mass. App. Ct. at 599, we conclude that the judgment must be reversed.

*Judgment reversed.*

*Verdict set aside.*

---

[7]Contrary to the defendant's contention, the prosecutor did not go beyond the judge's pretrial rulings except in a single case of an inadvertent fleeting reference. The claim of an improper basis of sentencing is disposed of by *Commonwealth* v. *Alfonso*, 19 Mass. App. Ct. 599, 610 (1985), where the court held that it was not enough to show that the judge accepted the prosecutor's recommendation, as there was nothing in the record (as there is nothing here) which indicated that the judge accepted the prosecutor's reasoning behind those recommendations.