## COMMONWEALTH vs. JAMES O'TOOLE.

No. 00-P-456.

Middlesex. March 13, 2001. - July 31, 2001.

Present: GREENBERG, BECK, & COWIN, JJ.

Further appellate review granted. 435 Mass. 1103 (2001).

*Controlled Substances. Practice, Criminal,* Required finding.

At the trial of a complaint charging the defendant with possession of heroin with intent to distribute and doing so within 1,000 feet of a school, the judge should have allowed the defendant's motion for a required finding of not guilty, where there was insufficient evidence to establish beyond a reasonable doubt that the defendant was the seller rather than the buyer of the heroin. [185-188]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on June 28, 1999.

· The case was tried before *Robert J. McKenna,* J.

*Thomas M. Glynn* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

BECK, J. A District Court jury of six convicted the defendant of possession of heroin with intent to distribute, G. L. c. 94C, § 32, and doing so within 1,000 feet of a school, G. L. c. 94C, § 32J. On appeal he claims that his motion for a required finding should have been granted. He argues there was insufficient evidence to establish beyond a reasonable doubt that he was the seller rather than the buyer of the heroin. We agree.

The evidence "in the light most favorable to the prosecution," *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), and largely uncontested, was as follows. Two undercover detectives, Thomas Kinsella and Paul Strong of the Everett police department's narcotics unit, had 131 Vernal Street in Everett under surveillance in the early afternoon of June 26, 1999. (The role of a third Everett detective is unclear.) The defendant

emerged from the front door, took a bicycle from the porch, and rode it to a nearby intersection. He stayed in the vicinity looking up and down the street.

About fifteen minutes later a black car appeared. The defendant moved toward the car, appeared to look into the car's rear window, and then approached the driver's side door, straddling the bicycle. After a brief conversation with the driver, the defendant "reached into the front of his pants, down into his underwear, removed something, put his hand inside the vehicle [and] withdrew his hand from inside the vehicle." "Within seconds" the detectives, who had been located about fifty feet away, pulled their unmarked car into the middle of the street right next to the black car and identified themselves as police. The defendant threw the bicycle down and ran, with Strong in pursuit not far behind.

The driver of the car, whose five year old son was in the back seat, was someone Kinsella had arrested four months earlier for knowingly being present where heroin was found. G. L. c. 94C, § 35. The driver got out of the car, whether at Kinsella's behest or on his own we do not know. After talking to the driver, Kinsella found fifteen glassine bags containing white powder, which later proved to be heroin, between the front seats of the black car. There was no further description of the location of the heroin or its visibility.

Meanwhile, Detective Strong followed the defendant back to 131 Vernal Street, keeping the defendant in his sight until the defendant entered that address through the back door and slammed it shut behind him. Entering from the front door, Strong found and arrested the defendant in a third-floor apartment. The defendant lived on the second floor.

Neither officer had been able to see what was in the defendant's hand at any point. There was no evidence that the defendant had either money or heroin on or near his person or that he was seen tossing anything away. Cf. *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 668 (1992) (defendant threw narcotics in trash barrel when police converged on the scene).

At booking, the driver was found to have $124 or $125 "on him." There was no other description of the money or its

location. The driver was charged with possession of heroin. The defendant was charged with distributing heroin.

Kinsella, an experienced narcotics officer, testified that the defendant's activities were consistent with distribution of narcotics. Kinsella testified that the fifteen bags of heroin had a street value of $75 and that an addict might use fifty to one hundred bags of heroin a day. On cross-examination, in response to a question suggesting that the defendant's conduct was also consistent with buying heroin, Kinsella responded that he "[didn't] know many people that keep money in their under-wear," but acknowledged that he did not see the defendant's underwear. Indeed, there was no evidence before the jury as to what the defendant was wearing that summer afternoon. (The detectives were wearing "shorts, loafers, no socks and a tank top.") There was also evidence that there was an outstanding warrant for the defendant's arrest.

At the conclusion of the Commonwealth's case, the defendant moved for a required finding, which the judge denied. The defendant argues that, "[w]hile it could be reasonably inferred from the evidence that the defendant was engaged in some type of illicit activity, the jury could not say whether the defendant was buying or selling." He argues that *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109 (1998), on which the Commonwealth and the trial judge relied, is distinguishable. Although the issue is close and the case law fact-bound and lacking bright-line standards, see *Commonwealth* v. *Gonzalez*, 47 Mass. App. Ct. 255, 257-258 (1999), on balance we conclude that the defendant's motion should have been granted.

In *Commonwealth* v. *Soto*, *supra*, there was what appeared to be a rendezvous involving two cars, each with a lone driver. Soto, the driver of one of the cars, "reach[ed] inside the driver's window of the [other car], remove[d] her hand, and proceeded back to [her car]. She was at the [other] driver's door . . . for no more than fifteen seconds. Thereafter both cars drove away." *Id.* at 110. The police followed and stopped the other car. After conversation with the driver asking whether she would cooper-ate (there was no objection to the question that produced that fact, see *id.* at 110 n.3), the driver produced a single package of cocaine from her bra. *Id.* at 110-111. She was charged with pos-

session of cocaine. *Id.* at 111. Soto, the driver of the other car, was charged with distribution of cocaine. Acknowledging that "it [was] conceivable that [the other person] was the seller . . . , [we concluded that] the finder of fact in the circumstances could reasonably conclude that that scenario was less likely and that it was more probable that the single packet in her bra was obtained by her as buyer." *Id.* at 112. (We reversed Soto's conviction, however, on the ground that hearsay testimony was improperly admitted at trial. *Id.* at 114.)

The defendant argues that *Soto* is distinguishable on the ground that the transaction in this case was "half-completed." The Commonwealth also argued in closing argument at trial that the transaction had been interrupted. We are not persuaded that this exchange was incomplete, or that, even if it was, it matters. However, we think there is a difference between the participant in *Soto* who had one package of cocaine in her bra and was charged with simple possession, and the driver of the car here who had fifteen bags of heroin and $125. On the other hand, the fact that there is no evidence the defendant had either money or heroin on or near his person or that he was seen tossing anything away does cloud the choices among possible inferences. There are two grounds on which to distinguish *Soto* from the facts in the case before us. First, we considered the facts that the rendezvous began near a "heroin house" where the officers had made undercover drug purchases, as lending substance to the officers' belief that they had witnessed a drug transaction. *Id.* at 110-111. Second, the person charged with simple possession had a single package of cocaine whereas here that person had fifteen bags of heroin and $125. Moreover, there is no evidence that the defendant's address or the neighborhood where the alleged transactions occurred were known for drug dealing, a factor many cases consider. Compare *Commonwealth* v. *Rivera*, 425 Mass. 633, 648-649 (1997); *Soto*, 45 Mass. App. Ct. at 111.

The Commonwealth argues that it was the drugs that were readily located in the black car and not the money, and that therefore the jury were warranted in inferring that the defendant was a dealer who had hastily transferred the heroin to the driver rather than a buyer who had given the driver money. The facts

do not support this argument. Kinsella found the heroin after a conversation outside the car with the driver. There was no testimony that the heroin was easily spotted. Nor was there evidence that the driver's money was inaccessible and therefore unlikely to have been recently obtained. Other than the fact that it was found on the driver, apparently during booking, and not in the car, the jury had no information about the money except the approximate amount.

While Kinsella's supposition about the defendant's underwear, which Kinsella did not see, may arguably support the Commonwealth's theory, the fact that it was the driver who had both money and fifteen bags of heroin, whereas there is no evidence the defendant had either, balances the inference regarding the underwear. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940). "In choosing among the possible inferences from the evidence presented, a jury necessarily would have had to employ conjecture. This is insufficient to sustain the burden resting on the Commonwealth." *Commonwealth* v. *Croft*, 345 Mass. at 145. The motion for a required finding should have been allowed. See *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 306 (1975) (five bags near defendant who had $41; small amount of cocaine near other man who had $146; evidence insufficient to determine who was buyer and who was seller); *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 998 (1982) (one man counting money; another with packages of narcotics); *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 538-539 (1990), all cited as distinguishable in *Soto*, 45 Mass. App. Ct. at 112. See also *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 667-668, 672 (1992) (head shake disapproving proposed sale of cocaine inconclusive). Contrast *Commonwealth* v. *Savageau*, 42 Mass. App. Ct. 518, 520 (1997) (exchange of small items between defendant and pedestrian plus passenger's visible possession of cocaine packaged for sale plus beeper on defendant's belt "tip the scale in favor of sufficiency" [citation omitted]); *Commonwealth* v. *Gonzalez*, 47 Mass. App. Ct. at 256, 258 (defendant and col-

laborator lingering on street corner for over an hour signaling to passing cars).

*Judgments reversed.*

*Verdicts set aside.*

*Judgments for the defendant.*