Moses, J.
I. Introduction
The Plaintiffs, which are Massachusetts corporations engaging in the business of recreational excursions, commenced the instant action challenging a decision by the defendant Provincetown Public Pier Corporation (the “Pier Corporation”) to increase fees charged to users of the MacMillan Pier (the “Pier”), located in the Town of Provincetown (“Town”). The Amended Complaint seeks certiorari review of the Pier Corporation’s decision pursuant to G.L.c. 249, §4 (Count I); a declaratoiy judgment pursuant to G.L.c. 231A, that the fees constitute an impermissible tax (Count II); and equitable relief for alleged Equal Protection violations (Count III).
This matter is before the court on defendants, Pier Corporation’s and the Town of Provincetown’s (collectively the “defendants”), partial motion to dismiss Count I pursuant to Mass.R.Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Count III under Mass.R.Civ.P. 12(b)(6) for failure to state a claim. The parties were before the court on September 14, 2004 for oral arguments. For the reasons discussed below, the motion to dismiss should be denied as to Count I and allowed as to Count III.
II. Background
The allegations in the Amended Complaint, taken as true for purposes of the pending motion only, are as follows. Plaintiffs are duly organized Massachusetts corporations, operating passenger boats for recreational purposes such as whale watching, sailing, yachting, and fishing. Plaintiffs moor their boats on floats located in Provincetown Harbor. Passengers board the plaintiffs’ boats by crossing gangways which connect the floats to the Pier. Plaintiffs own and maintain the floats and gangways.
The Pier is a marine facility, located in Provincetown Harbor and owned by the Town. It is accessible to all members of the public at all times. Aside from plaintiffs’ use of the Pier, commercial fishing boats dock along certain portions of the Pier to offload fish. Dinghys used to access larger boats moored in Provincetown Harbor also dock along the Pier. Additional areas along the Pier are designated for the loading and offloading of commuter ferries. These areas of the Pier are not utilized by the plaintiffs or their patrons.
The Town has historically maintained the Pier and was authorized to set fees for the connection of gangways to the Pier. It created a Licensing Board (“Board”), consisting of five members all appointed by the Town’s Board of Selectmen. The Board was authorized to issue licenses for the connection of gangways to the Pier. In addition, pursuant to the authority vested in it by the Town, the Board established a fee structure applicable to the operators as follows. Each float owner maintaining a vessel having a licensed capacity of less than 50 passengers for hire would pay the sum of $4,000.00 annually to the Town. Each float owner maintaining a vessel, or vessels, having a licensed capacity in excess of 50 passengers for hire would pay the aforementioned sum of $4,000.00 plus annual fee of $50.00 per licensed seat per licensed vessel.
On January 28, 2000 under Chapter 13 of the Act of2000 (the “Act”), the Legislature established the Pier Corporation, a public entity, whose purpose is “to aid *634 private enterprises, the town of Provincetown and other public agencies in the speedy and orderly redevelopment of certain marine and marine-related property within the town to stimulate economic development.” The Pier Corporation is authorized by enabling legislation to “establish and collect fees for the use of any properties owned or leased by the corporation.” However, the Act expressly requires a duly-noticed public hearing to be held prior to any establishment of fees. On November 6, 2003, following a public hearing, the Pier Corporation voted to set licensing fees at $8,000.00 per boat, plus $75.00 for each passenger seat over 50. The licensing fees charged to the plaintiffs to connect to the Pier are higher than licensing fees charged to commercial fishing boats.
Plaintiffs filed this action seeking certiorari review of the Pier Corporation’s decision pursuant to G.L.c. 249, §4 (Count I); a declaratory judgment, pursuant to G.L.c. 231A, that the fees constitute an impermissible tax (Count II); and equitable relief for alleged Equal Protection violations (Count III). The defendants move to dismiss Count I, pursuant to Mass.R.Civ.P. 12(b)(1), on the ground that the court lacks jurisdiction over plaintiffs’ certiorari review because the decision to raise fees is a legislative decision, and thus not subject to certiorari review. The defendants further move to dismiss Count III, pursuant to Mass.R.Civ.P. 12(b)(6), on the ground that Count III fails to state a claim upon which relief may be granted, because: (1) plaintiffs fail to meet the heightened requirements of an Equal Protection claim; and (2) the decision to raise fees is rationally related to a legitimate governmental purpose.
III. Standard of Review
In evaluating the allowance of a motion to dismiss under Mass.R.Civ.P. 12(b)(1) or 12(b)(6), the court is required to “accept the factual allegations in the plaintiffs’ complaint, as well as any favorable inferences reasonably drawn from them, as true.” Ginther v. Comm’r of Ins., 427 Mass. 319, 322 (1998). See also Nader v. Citron, 372 Mass. 96, 98 (1977). “A complaint is not subject to dismissal if it could support relief on any theory of law,” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (citation omitted), “even though the particular relief [which plaintiffl has demanded and the theory on which he seems to rely may not be appropriate.” Nader, supra at 104 (citation omitted). A motion to dismiss is not an appropriate vehicle for “resolv[ing] undecided points of substantive law.” M. Aschheim Co. v. Turkanis, 17 Mass.App.Ct. 968 (1983) (citation omitted).
Under Mass.R.Civ.P 12(b)(1), a complaint may be dismissed for lack of jurisdiction over the subject matter. See Mass.R.Civ.P. 12(b)(1). Subject matter jurisdiction determines whether a court can hear a particular type of suit. See Standard Oil Co. v. Montecatini Edison S.P.A., 342 F.Sup. 125, 129 (D.Del. 1972). Because it is an issue determined solely by the court, the parties cannot waive lack of jurisdiction or confer jurisdiction where it does not exist. See Mark v. Kahn, 333 Mass. 517, 519 (1956); Shea v. Neoponset River Marine & Sportfishing, Inc., 14 Mass.App.Ct. 121, 129 (1982). “Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.” McCracken v. Sears, Roebuck & Co., 52 Mass.App.Ct. 184, 188 (2001), citing Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974).
Similarly, a complaint may be dismissed under Mass.R.Civ.P. 12(b)(6) for failure to state a claim when it is clear that the plaintiff can prove no set of facts upon which he or she would be entitled to relief. See Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 68 (1992). This is a “relatively light burden.” Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). Plaintiff must be given the benefit of any doubt. Kipp v. Keuker, 7 Mass.App.Ct. 206, 210 (1979).
IV Discussion
A. Count I: Certiorari Review
Plaintiffs in Count I of the amended complaint seek review in the nature of certiorari under G.L.c. 249, §4. Massachusetts General Laws, Chapter 249, §4 provides, in part:
A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the . . . superior court.. . Where such action is brought against a body politic or officer exercising judicial or quasi-judicial functions to prevent the body or officer from proceeding in favor of another party . . . such other party may be joined as a party defendant by the plaintiff.
The requisite elements for availability of certiorari are “(1) a judicial or quasi-judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.” Boston Edison Co. v. Selectmen of Concord, 355 Mass. 79, 83 (1968). It is also well-established that review is “available only for the purpose of examining and correcting the errors of law manifest upon the record of some tribunal in its performance of judicature, and to restrain the excesses of jurisdiction of inferior courts or officers acting judicially." Fitzgerald v. Curley, 220 Mass. 503, 506 (1915) (citations omitted).
The defendants argue that this court lacks subject matter jurisdiction because plaintiffs cannot seek certiorari review when the decision to raise licensing fees does not arise from a judicial or quasi-judicial proceeding, but instead is a legislative decision. A proceeding is quasi-judicial when it determines individual rights or interests, as opposed to political or legislative matters. Cumberland Farms, Inc. v. Montague Econ. *635 Dev. and Indus. Corp., 38 Mass.App.Ct 615, 621 (1995); see also Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). The matter of which the plaintiffs complain falls under this classification. It relates to the exercise of judicial or quasi-judicial functions.
Certiorari is available to review an administrative board’s decision, after a hearing required by law, but is not available with respect to wholly discretionary decisions as to which no rule or law entitles any affected party to a hearing. See, e.g., Walpole v. Sec. of Executive Office of Envtl. Affairs, 405 Mass. 67, 72-73 (1989) (certiorari review not available where approval of siting of sludge disposal facility was wholly discretionaiy and did not require hearing); The First Church of Christ, Scientist v. Alcoholic Beverages Control Comm’n, 349 Mass. 273, 274-75 (1965) (court found that the approval by the Commission of a transfer of a liquor license is not reviewable on a writ of certiorari because it was discretionary and required no hearing). However, in the case at bar, plaintiffs were afforded a right to hearing before the defendant Pier Corporation pursuant to Chapter 13, section 6, providing that “[n]o . . . fee . . . shall be undertaken until a public hearing relating to the . . . fee . . . has been held by the corporation after due notice ...” Such hearing afforded the parties affected, namely the plaintiffs, an opportunity to challenge the proposal.
The defendants assert that the establishment of rates for the use of the Pier is within the powers and duties delegated to the Pier Corporation by the state legislature for the purpose of redeveloping the Pier and stimulating economic growth in the Town. Thus, it is a decision applicable to an entire class of users and is not an ad hoc determination regarding a particular user. This argument is unconvincing as the increase in licensing fee to non-commercial fisheries users of the Pier clearly affected an individual group, the plaintiffs. The defendants were well aware that such increase would directly impact the plaintiffs and their businesses.
The defendants further contend that “the making of rates is a legislative and not a judicial function” and thus is not reviewable by the court. They rely upon several cases for this proposition, including Terminal R.R. Ass’n of St. Louis v. U.S., 266 U.S. 17 (1924), and Risk Mgmt. Found. of the Harvard Med. Inst., Inc. v. Comm’r of Ins., 407 Mass. 498 (1990). However, their reliance is misplaced as neither case dismissed the action based on the ground that rate-making is not a judicial matter. In Terminal R.R. Ass’n of St. Louis, although the court expressly states that rate establishment is a legislative issue, it went on to state that “as a general rule . . . the question of the reasonableness of rates . . . will not be considered by the courts before application has been made to the Commission.” 266 U.S. at 31 (citations omitted).[3] The plaintiffs here have expressed their dissatisfaction over the increase in fees, claiming that they are unreasonable at the scheduled public hearing as evidenced by the minutes of the meeting. Because plaintiffs have brought the matter to the attention of Pier Corporation at the hearing prior to their filing of the complaint, review under writ of certiorari becomes available to them.
Similarly, the court in Massachusetts Auto. Rating & Accident Prevention Bureau v. Comm’r of Ins., 389 Mass. 824 (1983), decided the issue whether there was evidence to support the Commissioner’s decision to increase the 1983 automobile insurance rate by 18.5%. In its determination, the court stated that “since fixing the rates is not a judicial function,... we do not substitute our judgment for that made by the Commissioner as to the adequacy or reasonableness of the premium charges ultimately set. The Commissioner must make findings that indicate the over-all basis for his decision.” Id. at 828 (citation omitted). Therefore, the rates set by Pier Corporation are well within the discretion of this court to determine whether they have reasonable support in evidence. Moreover, actions in the nature of certiorari, such as this one, are appropriate to correct errors by municipal agencies in proceedings not otherwise reviewable by motion or appeal.
B. Count III: Equal Protection
Plaintiffs seek a declaration that disparity in licensing fees violates the Equal Protection Clause as guaranteed by the Massachusetts Declaration of Rights and United States Constitution because no rational basis or legitimate purpose justifies treating plaintiffs differently than those maintaining commercial fishing fleets.
Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment. See In the Matter of Corliss, 424 Mass. 1005, 1006 (1997) (“One indispensable element of a valid equal protection claim is that individuals who are similarly situated have been treated differently”); Barrington Cove Ltd. P’ship v. Rhode Island Housing and Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001). One crucial factor, then, is that plaintiffs must “allege facts indicating that ‘compared with others similarly situated, [it] was selectively treated . . .’ ” Id. at 7.
To determine whether individuals or entities are “similarly situated” for equal protection purposes, “the test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Id. at 8.
The “relevant aspects” are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the case must be fair congeners. In other words, apples should be compared to apples.
Id., quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989).
*636 Thus, plaintiffs’ “obligation is to identify and relate specific instances where persons similarly situated ‘in all relevant aspects’ were treated differently.” Dartmouth Review, supra at 19. To survive a threshold motion to dismiss on his equal protection claim, plaintiffs must allege facts that would support a finding that their boats were “similarly situated” to those commercial fishing fleets. Plaintiffs’ allegation that all fleets are similarly situated because they all use the Pier misses the mark. Facts asserted by plaintiffs reveal the fundamental difference between the two groups: (1) plaintiffs use the Pier for the business of recreational excursions while the latter use the Pier for the purpose of commercial fishing; and (2) commercial fishing fleets utilize a separate portion of the Pier that are not used by plaintiffs and their passengers. See The New York Times Co. v. Comm’r of Revenue, 427 Mass. 399, 406-07 (1998) (tax imposed on corporate aircraft but not commercial aircraft owned by airlines or other surface vehicles used for interstate transportation did not violate the equal protection clause absent evidence that they were “relevantly similar”).
In addition, the government has long recognized the importance of commercial fishing, and the need to preserve and promote it, by according the industry widely disparate treatment from that it accords other types of marine-related activities.[4] Therefore, as plaintiffs are different from the other pier users, they are not similarly situated and their equal protection claim lacks any foundation. It is not enough to allege that the plaintiffs were held to a different standard than other users of the Pier, if these other users were not similarly situated.
Even if the two groups could be viewed as similarly situated, Count III would still not survive the motion to dismiss. Defendants argue that plaintiffs failed to allege an additional element of the equal protection claim, that the higher fees are based on impermissible consideration. Plaintiffs, nevertheless, contend that motivation is irrelevant to the equal protection claim, relying upon Village of Willowbrook v. Olech, 528 U.S. 562 (2000). Plaintiffs claim that an equal protection plaintiff need only plead and prove (1) disparate treatment and (2) lack of a rational basis for the disparity.
It is well-established in this Circuit that to prevail on an equal protection claim, plaintiffs are required to show both (1) that they were treated differently from other similarly situated individuals; and (2) that such differential treatment was based on “impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.” Barrington Cove Ltd. P’ship, 246 F.3d at 8, quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995); see also Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004).
Plaintiffs’ reliance on Village of Willowbrook is unpersuasive as the court in Schultz v. Kelly, 188 F.Sup.2d 38 (D.Mass. 2002), explained that Village of Willowbrook makes clear that plaintiffs must still prove “that [they have] been intentionally treated differently from others similarly situated and that there is no rational basis for the different in treatment.” Id. at 54, quoting Village of Willowbrook, 528 U.S. at 564 (emphasis added). Plaintiffs have not made any showing of improper motive or malicious intent underlying the Her Corporation’s decision to raise fees for recreational excursion boats. Absent such allegation, the equal protection claim must fail.
In addition, plaintiffs premise their equal protection claim on an allegation that the higher licensing fees “are without a rational basis." Because they do not claim to be members of a suspect group or that a fundamental interest is involved, the licensing fees set by Her Corporation withstands equal protection scrutiny as long as it is supported by a rational basis. Naples v. Comm’r of the Dep’t of Employment and Training, 412 Mass. 631, 635 (1992); Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd., 416 Mass. 635, 640 (1993). The rational basis test is lenient. See Walker v. Exeter Region Co-Op. School Dist., 284 F.3d 42, 46 (1st Cir. 2002). “A classification will be considered rationally related to a legitimate purpose if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” Chebacco Liquor Mart, Inc. v. Alcoholic Beverages Control Comm’n, 429 Mass. 721, 723 (1999) (quotations omitted).
V. Conclusion
For the foregoing reasons, the defendants’ partial motion to dismiss should be allowed in part and denied in part.
ORDER
The Defendants’ Motion to Dismiss Count II of the Amended Complaint is DENIED. The Motion to Dismiss, Count III, is ALLOWED.

Likewise, the court in Risk Mgmt. Found, of the Harvard Med. Inst., Inc. did not address the issue that rate making is not within the jurisdiction of the court, but rather went on to interpret who is liable under the recoupment provision of St. 1975, c. 362, §6.

defendants point to such special governmental treatment including: legislation (see, e.g., G.L.c. 130, §§17(3), 17(4) (conferring powers on administrative agency to help promote and develop commercial fishing); G.L.c. 63, §31(A)(a) (granting tax relief to businesses engaged in commercial fishing)); strict regulation of maximum allowable fishing stocks (see, e.g., Tutein v. Daley, 43 F.Sup.2d 113 (D.Mass. 1999) (deciding commercial fishermen’s suit challenging federal declaration that Atlantic Bulletin Tuna was overfished)); and development of public property for commercial fishing (see, e.g., New England Reg’l Council of Carpenters v. Massachusetts Port Auth., 115 F.Sup.2d 84 (D.Mass. 2000) (noting that Massachusetts Port Authority operates Boston Fish Pier as commercial fishing center for unloading, processing, and auctioning of fish)).