COMMONWEALTH *vs.* MICHAEL TANNER.

No. 05-P-145.

Suffolk. January 11, 2006. - June 5, 2006.

Present: DUFFLY, DREBEN, & CYPHER, JJ.

*Controlled Substances. "School Zone" Statute. Evidence,* Hearsay. *Practice, Criminal,* Hearsay.

At the trial of a criminal complaint, the evidence (which was largely, if not exclusively, circumstantial) was sufficient to convict the defendant of distribution of cocaine, in violation of G. L. c. 94C, § 32A, where the defendant met briefly with a third party in a high crime area, stood close to him in manner consistent with displaying small items, kept a careful lookout throughout the meeting, and was spotted moments later surreptitiously counting money, and where the facts more strongly suggested that the defendant was the seller and the third party the buyer [433-435]; further, the defendant did not carry his burden of showing that the evidence was insufficient to convict the defendant of distributing cocaine within a "school zone," where the defendant's challenge to the method employed by the arresting officer for measuring the distance from the transaction to a nearby school went to the weight of the evidence rather than its legal sufficiency [435-437].

At a criminal trial, the admission of testimony from the arresting police officer that communicated to the jury, implicitly if not explicitly, the substance of incriminating statements that were otherwise inadmissible, was improper, where the testimony was not required to establish the officer's state of knowledge or relevant to a live issue before the jury, and where the prejudicial impact of the testimony could not have been more acute, given that the Commonwealth's case, while legally sufficient, was not overwhelming. [437-441]

COMPLAINT received and sworn to in the Boston Municipal Court Department on March 3, 2004.

The case was tried before *Annette Forde,* J.

*James G. Lavery* for the defendant.

*Kathleen Celio,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. From his conviction by a Boston Municipal Court

jury of distribution of cocaine, G. L. c. 94C, § 32A, and of the same offense within a school zone, G. L. c. 94C, § 32J, the defendant appeals, arguing that: (1) the Commonwealth's evidence was legally insufficient as to both counts, and (2) the outcome of his trial was materially affected by the improper admission of hearsay evidence. Because we agree with the latter contention, we reverse.

We begin with a discussion of the claimed insufficiency of the evidence, which will provide context for our later discussion in which we conclude that certain evidence should not have been admitted and that its admission was prejudicial because, despite its sufficiency, the evidence supporting conviction was weak.

Based on the evidence, the jury could have found as follows: Police observed the defendant and a man later identified as Moses Sawyer standing face to face, conversing, on the corner of Kneeland and Washington streets in downtown Boston, an area known for illegal drug sales. The defendant stood with his hand out in front of him, palm up, as if he were displaying something to Sawyer. As the men spoke, the defendant kept looking up and down the street. Police then briefly lost sight of them. A few minutes later, officers spotted the defendant inside a nearby fast food restaurant. The defendant was seated by himself and had not purchased any food. He was surreptitiously counting money held under the table top.

At approximately the same time, police located Sawyer. He had walked a short distance from the place where he had been seen with the defendant. Police watched as Sawyer attempted to buy five bags of "crack" cocaine from a man later identified as Ennis Roberts.[1] Sawyer and Roberts were arrested and the five bags of cocaine seized. Sawyer was searched, and six additional bags of cocaine were recovered from his pocket. Police then placed the defendant under arrest. A search of the defendant yielded $130 in cash, but no drugs.

*Discussion.* 1. *Sufficiency of the evidence of distribution.* The gravamen of the defendant's argument is that the Commonwealth's case is legally insufficient due to the absence of

---

[1] A codefendant below.

any direct evidence, in particular any eyewitness testimony, of possession or of a transfer of illegal drugs between the defendant and Sawyer. In these circumstances, the defendant claims, the jury necessarily engaged in improper speculation in order to find that a drug sale had occurred. In the alternative, the defendant argues that even if a reasonable fact finder could have inferred that Sawyer and the defendant were engaged in a drug transfer, the evidence equally supported the view that Sawyer, rather than the defendant, was the seller. In these circumstances, the argument goes, the element of distribution would not be proved and his motion for a required finding of not guilty with respect to that offense was improperly denied.

Consistent with the familiar rule, in assessing whether a motion for a required finding of not guilty was properly denied, the inquiry focuses on whether "*any* rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). The evidence against the defendant was largely, if not exclusively, circumstantial. However, that fact, standing alone, does not negate the legal sufficiency of the government's case. Under the standard set out in *Latimore*, circumstantial evidence is a permissible basis upon which to premise a conviction. See *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556 (1991) (possession of illegal drugs proved exclusively by circumstantial evidence).

Here, the defendant met briefly with Sawyer in a high crime area, see *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 538-539 (1990), standing close to him in a manner consistent with displaying small items. Throughout the meeting, the defendant kept a careful lookout. Moments later, the defendant was spotted surreptitiously counting money ($130 in cash was removed from his person following his arrest). See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989) (possession of large amounts of cash consistent with drug sales). Further, shortly after his encounter with the defendant, Sawyer was observed engaged in an outwardly similar transaction with another man that indisputably involved Sawyer's purchase of crack cocaine. Based on this evidence the jury, although not required to do so,

was entitled to infer that the defendant had sold cocaine to Sawyer notwithstanding the fact that no actual transfer was observed.

On its facts, this case resembles *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 111-112 (1998). In *Soto*, police observed the defendant and an alleged buyer meet in an area known to be a locus for illegal drug sales. The defendant reached briefly into the alleged buyer's car. Both parties then attempted to leave, but were immediately stopped by police. When the alleged buyer was placed under arrest, she produced a packet of cocaine from inside her clothing. Despite the fact that no actual transfer was seen, we concluded in *Soto* that the government's evidence nonetheless provided a legally sufficient basis for concluding that a drug sale had, in fact, occurred. *Id.* at 112. As we observed in that case, "in certain situations, an illegal drug transaction may be inferred from other circumstances even if what is transferred is not actually seen." *Ibid.*

There is likewise no merit to the defendant's argument that the government's proof was legally insufficient on the question of the direction of the transfer. The facts more strongly support the inference that the defendant was the seller and Sawyer the buyer: (1) after the sale, Sawyer was the one with the drugs while the defendant had only money; (2) Sawyer was seen buying drugs from another man shortly after his encounter with the defendant, suggesting that he was a buyer rather than a seller; and (3) the act of counting money is, in a cash transaction, arguably more consistent with the role of seller, rather than buyer. As we stated in *Soto*, rejecting the same argument, "[t]he Commonwealth in proving its case need not exclude every hypothesis. The inference that the defendant sold the drugs 'need not be necessary or inescapable so long as it is reasonable and possible.' " *Ibid.*, quoting from *Commonwealth* v. *Cohen*, 412 Mass. 375, 380 (1992). See *Commonwealth* v. *Miller*, 17 Mass. App. Ct. 991, 991 (1984). The inference that the defendant was the seller here was "reasonable and possible." The Commonwealth's case, while certainly not overpowering, was legally sufficient.

2. *Sufficiency of the evidence of the "school zone" violation.* The defendant next challenges the sufficiency of the Com-

monwealth's evidence with respect to his conviction under G. L. c. 94C, § 32J, which penalizes the sale of illegal drugs within 1,000 feet of school property, that is, within a school zone. We reject the defendant's claim that the measuring method used by police was too imprecise to provide a legally sufficient basis for inferring that any drug sale had in fact occurred within a school zone.

At trial Detective Lynch, the arresting officer, testified that due to the location of buildings in the area where the drug sale had occurred, a simple point-to-point measurement was impossible. Instead, Lynch, using the Pythagorean theorem,[2] calculated the distance from the edge of the school property to the point of sale to be 902 feet. To support this result, Lynch introduced photographs of the area showing the location of the various buildings described in his testimony.

In pressing his argument for legal insufficiency, the defendant makes much of the fact that there was no conclusive evidence that the two legs measured by the detective were straight or that their intersection formed an exact ninety degree angle — both prerequisites for obtaining a precise measurement under the technique used here. He also questions whether the point selected by Lynch as the site of the offense was accurate. We do not agree that these alleged deficiencies impair the legal sufficiency of the government's case.

As described above, where a defendant alleges legal insufficiency of the evidence, a reviewing court must ascertain whether the Commonwealth presented adequate evidence on each element of the offense charged. See *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). However, in conducting this analysis, the weight or credibility of the evidence adduced by the prosecution is largely irrelevant. See *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980) (weight of evidence not

---

[2]This well-known formula provides that the sum of the squares of the lengths of the two shorter sides of a right triangle equals the square of the length of the long side. The officer began at the intersection of the hypotenuse and one leg of the triangle (the edge of the school zone on Tremont Street), proceeded along the length of one of the legs (Tremont Street), made a right angle turn and proceeded along the length of the other leg (Stuart and Kneeland Streets) and ended up at the intersection of the other leg and the hypotenuse (the point of sale).

ordinarily subject to review on appeal). With few exceptions, the task of assessing the cogency of evidence and resolving conflicting testimony is the exclusive province of the fact finder. See *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981). The defendant's arguments go to the weight, not the legal sufficiency, of the evidence. There is no question that the officer's testimony, including both his physical description of the area and his explanation of the mathematical underpinnings of his calculations, taken together with photographs of the streets in question, satisfies the threshold requirements of *Latimore*. The jury would have been entitled to reject the officer's conclusion but they were not required to do so merely because it may arguably have contained elements of imprecision or because better alternative measurement techniques might have been employed. Any shortcomings in the methodology used by Lynch provided grist for defense counsel's cross-examination and, ultimately, were for the jury to consider in arriving at their verdict, but did not negate the legal sufficiency of the evidence. See *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991).

3. *Admission of hearsay.* During the redirect examination of Detective Lynch, the following exchange occurred:

> PROSECUTOR: "Now there is a question asked to you by defense counsel yesterday with regard to you [*sic*] had a conversation with Mr. Sawyer. And Mr. Sawyer was the individual you saw Officer Pirrello holding at the time?"
>
> LYNCH: "Yes, that's correct."
>
> PROSECUTOR: "And what did you ask Mr. Sawyer?"
>
> DEFENSE COUNSEL: "Object."
>
> THE COURT: "Overruled."
>
> LYNCH: "I asked Mr. Sawyer where he got the drugs from."
>
> PROSECUTOR: "Okay. And what did you do after you asked him that question?"
>
> LYNCH: "After I asked that question I went directly back inside the McDonald's where Officer Williamson was with

[the defendant]. I told [the defendant] to stand up and I placed him under arrest."

The defendant contends that Lynch's testimony consisted of extrajudicial statements that directly inculpated the defendant as the supplier of the drugs found in Sawyer's pocket, and so filled an important gap in the government's chain of proof. He argues that even if Lynch was entitled to explain his actions at the crime scene by indicating that he had placed the defendant under arrest after speaking with Sawyer, he should not have been allowed to imply the actual substance of his conversation with Sawyer. We agree that admission of this testimony was improper.

The question of the admissibility of the contested evidence first arose at the close of Lynch's cross-examination. At that time, the prosecutor indicated that, because defense counsel had asked Lynch whether he had spoken to Sawyer before arresting the defendant, the prosecutor was free to inquire on redirect about the details of that conversation. The judge ruled otherwise, stating that the substance of the conversation with Sawyer "will not be allowed." The prosecutor then asked whether she could inquire of Lynch .whether he "had a conversation with Mr. Sawyer and then . . . went back into the McDonald's." "That you may [ask]," the judge replied. Despite this limitation, the prosecutor ultimately elicited the particulars of Lynch's side of the conversation with Sawyer.

In justifying the admission of Lynch's testimony, the Commonwealth first argues that the statements were admissible — indeed, required — to explain the actions of officers at the scene of the arrest. Police are entitled to explain the motivations for their conduct in carrying out an investigation. As we stated in *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554 (1989), quoting from McCormick, Evidence § 249, at 734 (3d ed. 1984), an "investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct." In conformity with this principle, police, in appropriate circumstances, may state that actions were taken upon "information received," or "as a consequence of a conversa-

tion" with a particular witness. *Commonwealth* v. *Perez, supra*
at 555. Because such explanatory statements do not repeat the
substance of out-of-court conversations, they pose no hearsay
(and, by extension, no confrontation) issues. *Ibid.* See *Commonwealth* v. *Sepulveda,* 6 Mass. App. Ct. 868, 869 (1978).

However, even where properly constrained, "[t]estimony of
this kind carries a high probability of misuse." *Commonwealth*
v. *Rosario,* 430 Mass. 505, 509 (1999). Specifically, it may be
used to communicate to the jury, implicitly if not expressly, the
substance of incriminating statements that are otherwise
inadmissible. In recognition of this danger, the Supreme Judicial
Court has determined that even general evidence of extrajudicial conversations presented to show the state of police knowledge
may be admitted only where (1) the evidence is presented by a
police officer on the basis of his own personal knowledge; (2) the
testimony is strictly limited to "facts required to establish the officer's state of knowledge"; and (3) the question of police
knowledge is relevant and material to some live issue before the
fact finder. *Id.* at 509-510.

We are not persuaded that the foregoing conditions were
satisfied here. Specifically, the record does not support the view
that admission of the contested testimony was either "required
to establish the officer's state of knowledge" or relevant to a
live issue before the jury. The jury had been presented with
significant evidence of the circumstances surrounding the arrests and there was no risk that, but for Lynch's testimony
concerning his conversation with Sawyer, the jury would have
been confused or mystified about the reasons why police attention had settled on the defendant.[3] See *Commonwealth* v. *DiStasio,* 294 Mass. 273, 287 (1936). Indeed, the fact that Lynch's
statement did not come in during direct examination, but rather
on redirect, is a powerful indication that the testimony was not
essential to the Commonwealth's explanation of the underlying
events.

Moreover, even in situations where the Commonwealth is
permitted to put on some evidence of the state of police

---

[3]Five police witnesses testified during the Commonwealth's case-in-chief,
all of whom provided detailed accounts of the surveillance operation during
which the defendant was arrested.

knowledge, the substance of any out-of-court conversations "should be curtailed because of its prejudicial potential." *Commonwealth* v. *Rosario*, 430 Mass. at 509. Lynch's testimony — that he "asked [] Sawyer where he got the drugs from" and, after hearing Sawyer's response, that he "went directly back inside the McDonald's [and] placed [the defendant] under arrest" — was the functional equivalent of telling the jury that Sawyer had identified the defendant as the man who had sold him cocaine. The prejudicial impact of the recitation of Lynch's out-of-court statements, coupled with evidence of Sawyer's implied response which unmistakably communicated the substance of Sawyer's own statements, could not have been more acute. The testimony ran to the principal question before the jury and filled a key gap in the Commonwealth's proof; at the same time, the Commonwealth's case, while legally sufficient, was by no means overwhelming.

As an alternative justification for the admission of Lynch's testimony regarding his conversation with Sawyer, the Commonwealth argues that the statements were also admissible because defense counsel had opened the door on the subject during cross-examination of Lynch.[4] See *Commonwealth* v. *O'Brien*, 35 Mass. App. Ct. 827, 834 (1994) (no error in pursuing potentially inadmissible matters where defense opens door on cross-examination). We do not agree that the substance of Lynch's conversation with Sawyer had been made the subject of cross-examination. Defense counsel noted, in passing, that Lynch had spoken to Sawyer but he did not probe any of the details of their discussion and so did not open the topic for redirect. It is apparent from the limiting instruction imposed by the trial judge (and disregarded by the prosecutor) that she had reached the same conclusion.

Because we conclude that the error was preserved,[5] reversal is required unless we can say that the error "did not influence

---

[4]The inquiry was in fact made by defense counsel for a codefendant, a point not relevant to the outcome of our analysis.

[5]Counsel for the defendant made a timely objection to the prosecutor's question concerning the substance of Lynch's out-of-court statements to Sawyer. This objection was sufficient to alert the judge to the hearsay issue, particularly in light of the previous discussions between the judge and counsel on this precise issue. See, e.g., *Commonwealth* v. *Cancel*, 394 Mass. 567, 570

the jury, or had but very slight effect." *Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).[6] For the reasons already stated, including the weakness of the government's case, we cannot so conclude. See *Commonwealth* v. *Perez*, 411 Mass. 249, 261 (1991) (most important factor in determining whether error is prejudicial is over-all strength of case against defendant). The judgment of conviction is reversed and the case remanded to the Boston Municipal Court for such further proceedings as the Commonwealth may elect to pursue.

*Judgment reversed.*

*Verdict set aside.*

(1985) (general objection suffices to exclude hearsay to which no exception applies); *Commonwealth* v. *Koney*, 421 Mass. 295, 299 (1995) (adequacy of objection must be assessed in context of trial as whole). A motion to strike the statement or a curative charge was not necessary to preserve the error. See *Commonwealth* v. *Conroy*, 396 Mass. 266, 267 n.1 (1985). Cf. *Commonwealth* v. *Hawley*, 380 Mass. 70, 86 (1980) (counsel has duty to alert judge timely to prosecutorial abuse, but form of objection is not prescribed).

[6] In the absence of any objection, we review any error only to determine whether a substantial risk of a miscarriage of justice is posed. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). In light of the weakness of the Commonwealth's case, and the prosecutor's disregard of the judge's limitation on this line of questioning, which was highly prejudicial to the defendant, we conclude reversal is warranted even if reviewed under this standard.